UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

JOHN DOE,

              Plaintiff,

    vs.

BRENT FLUKE, in his individual and official capacity; REBECCA SCHIEFFER, in her individual and official capacity; ALEJANDRO REYES, in his individual and official capacity; LAINE SCHRYVERS, in his individual and official capacity; TAMMY DOYLE, in her individual and official capacity; SOUTH DAKOTA DEPARTMENT OF HEALTH, in its individual and official capacity; CORRECTIONAL HEALTH SERVICES, in its individual and official capacity; CHS JANE DOES 1-2, in their individual and official capacities; DR. MARY CARPENTER, in her individual and official capacity; STEPHANIE HAMILTON, in her individual and official capacity; SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, in its individual and official capacity; MIKE LEIDHOLT, in his individual and official capacity; TIM REISCH, in his individual and official capacity; SAM BADURE, in his individual and official capacity; CODY HANSON, in his individual and official capacity; MELISSA MATURAN, in her individual and official capacity; TAMMY TOP, in her individual and official capacity; JESSICA SCHURER, in her individual and official capacity; "X" SALOUM, in his or her individual and official capacity; DARIN YOUNG, in his individual and official capacity;

4:21-CV-04167-KES


1915A SCREENING

JENNIFER DREISKE, in her individual
and official capacity; SOUTH DAKOTA
BOARD OF PARDONS AND PAROLES,
in its individual and official capacity,
CHARISSA WAREMBOURG, in her
individual and official capacity; CHUCK
GILCHRIST a/k/a Charles Gilchrist, in
his individual and official capacity;
BRENNA CARLSON, in her individual
and official capacity; MARK
STOEBNER, in his individual and
official capacity; JAMES HENRY, in his
individual and official capacity,
GLOBAL TEL LINK CORPORATION, in
its individual and official capacity;
SUMMIT FOOD SERVICE, in its
individual and official capacity;
UNKNOWN CORRECTIONAL HEALTH
SERVICES EMPLOYEES, in their
individual and official capacities; JOHN
DOE, in his individual and official
capacity; VOIGT, in her official capacity;
DOUG CLARK, in his official capacity;
DAN SULLIVAN, in his official capacity,

Defendants.

Plaintiff, John Doe, an inmate at the Mike Durfee State Prison, filed a pro
se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court granted
Doe leave to proceed in forma pauperis and ordered him to pay an initial filing
fee. Docket 6. Doe timely paid his initial filing fee on December 8, 2021. The
court will now screen Doe's complaint under 28 U.S.C. § 1915A.

## I.      1915A Screening

### A.      Factual Background

The facts alleged in Doe's complaint are: that several conditions at the prison violate Doe's rights. Docket 5 at 8-81.[1] Doe sues all individual defendants in their individual and official capacities,[2] except for defendants Voigt,[3] Tim Reisch,[4] and Darin Young,[5] who are sued in their official capacities only. *See id.* at 1-7. He seeks declaratory relief, several forms of injunctive

---

[1] Because this court granted Doe's motion to seal, this order will cite to the redacted version of Doe's complaint.

[2] Doe names Cody Hanson, a Unit Manager at the South Dakota State Penitentiary, and Jessica Schruer, an employee at the South Dakota State Penitentiary, as defendants in this case in their individual and official capacities. Docket 5 at 4-5. Doe makes no mention of Hanson or Schruer in his complaint, only mentioning that "unit managers" have access to confidential medical information. *See id.* at 23. Thus, there are no claims brought against Hanson and Schruer, and they are dismissed from this case.

[3] Although Doe refers to a defendant Voigt in his complaint and states several claims against her, he does not list her as a party to the complaint and does not specify the capacity in which he sues her. *See* Docket 5 at 1-7. If a plaintiff does not specific the capacity in which he or she sues a defendant, the suit is treated as only including official capacity complaints. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, Doe sues Voigt in her official capacity only.

[4] Doe brings claims against Tim Reisch, the former Interim Secretary of Corrections, in his individual and official capacity. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). The current Interim Secretary of Corrections is Doug Clark, who is automatically substituted for Reisch for official capacity claims.

[5] Doe brings claims against Darin Young, the former Chief Warden of the South Dakota State Penitentiary, in his individual and official capacity. The current Chief Warden of the South Dakota State Penitentiary is Dan Sullivan, who is automatically substituted for Darin Young for official capacity claims. *See* Fed. R. Civ. P. 25(d).

relief, and money damages for all claims except where noted. *See, e.g.*, *id.* at 10.

### 1.   Medical Issues

#### a.   Sleep Apnea

Doe alleges that prison staff are deliberately indifferent to several serious medical needs. *Id.* at 8-25. Doe claims that he suffers from sleep apnea and acid reflux. *Id.* at 8. He was issued a head of bed wedge to alleviate these conditions by elevating his head and neck. *Id.* He alleges that Brent Fluke, Rebecca Schieffer, and Tammy Doyle failed to eliminate bed bugs, and as a result, Stephanie Hamilton and another prison employee, Rachel Tycz, had inmates dispose of their wedges. *Id.* at 8-9. Doe alleges that prison staff refused to replace the wedges, and instead provided him and other inmates with information on diet modifications and weight loss. *Id.* at 9. He alleges that, as an inmate, he has no control over his diet. *Id.* He also claims that prison staff took away the wedges in retaliation for an inmate's fiancé contacting the media over the bed bug issue. *Id.* Doe brings these claims against Fluke, Dr. Mary Carpenter, Hamilton, Doyle, Alejandro Reyes, Correctional Health Services, DOH, Reisch, and DOC. *Id.*

#### b.   Shoulder Pain

Doe claims that he has several issues with both shoulders. *Id.* at 10-18. He claims that when he was previously an inmate at the prison in 2006 or 2007, medical staff issued a medical order allowing him two extra pillows to reduce pressure on his shoulders. *Id.* at 11. He returned to custody in May

2017 and was incarcerated at the South Dakota State Penitentiary, where Correctional Health Services, Young, Tammy Top, and Correctional Health Services Jane Doe 1 initially refused him extra pillows. *Id.* Melissa Maturan rejected a grievance on this issue. *Id.* After a recommendation from a doctor at AMG Orthopedics and Sports Medicine, Doe was granted the extra pillows. *Id.* He alleges that he then returned to the prison in 2019, where Fluke, Carpenter, Correctional Health Services, Correctional Health Services Jane Doe 2, DOC, Doyle, Reyes, Schieffer, and Laine Schryvers refused to allow Doe extra pillows. *See id.* at 11-12. Doe claims that a "Comfort Care Memo" written by former Warden Robert Dooley and Carpenter in February 2014 states that medical services will not issue non-medical items, including pillows. *Id.* at 11. He claims that Carpenter and Young relied on this memo to refuse him extra pillows and that the DOC refuses to issue pillows without a medical order. *Id.* He also claims that Reyes refused a request for reasonable accommodation in his role as ADA Coordinator. *Id.* at 12. Doe brings these claims against DOC, Correctional Health Services, Correctional Health Services Jane Does 1 and 2,[6] Young, Jennifer Dreiske, Carpenter, Sam Badure, Maturan, Fluke, Doyle, Reyes, Schieffer, and Schryvers. *Id.* at 12-13.

---

[6] Doe names two Correctional Health Services Jane Does as defendants. Docket 5 at 2-4. One is a nurse at the prison, and one is a nurse at the South Dakota State Penitentiary. *Id.* This court will refer to the prison nurse as "Correctional Health Services Jane Doe 1" and the South Dakota State Penitentiary nurse as "Correctional Health Services Jane Doe 2."

### c.     Right Shoulder Pain

Doe claims that he continues to have pain in his right shoulder, including grinding, clicking, and popping. *Id.* at 14. He claims that medical staff have noticed the grinding, clicking, and popping. *Id.* He also claims that Correctional Health Services staff at the South Dakota State Penitentiary and Carpenter refused to allow the surgeon who treated Doe's left shoulder to treat his right shoulder. *Id.* Top told Doe that it is normal to live with pain daily. *Id.* Doe alleges that he continues to have right shoulder pain and that Correctional Health Services staff at the prison, along with Carpenter, refuse to provide him with any treatment other than Tylenol, Ibuprofen, occasional injections, and physical therapy. *Id.* He alleges that Tylenol and Ibuprofen do not reduce the shoulder pain, that the injections only provide temporary relief or no relief at all, and that physical therapy is always discontinued after only a couple sessions because Doe has full range of motion and strength in his shoulder and the therapists claim they cannot do anything for the pain. *Id.* Doe also alleges that Correctional Health Services and Carpenter refuse to order MRIs or schedule examinations by specialists, even as his pain worsens. *Id.* at 15. Doe brings these claims against Correctional Health Services, Carpenter, Fluke, Young, Dreiske, and Maturan. *See id.* at 15-16.

### d.     Left Shoulder Pain

Doe claims that he has had severe pain in his left shoulder for years. *Id.* at 16. Correctional Health Services staff prescribed Tylenol and Ibuprofen for treatment, which did not work. *Id.* On October 19, 2018, Doe had surgery on

his left[7] shoulder at AMG Orthopedics and Sports Medicine. *Id.* He alleges that he was told that the surgery was extremely painful and that a catheter would normally be inserted into the shoulder to provide morphine. *Id.* Instead, the DOC allowed him to have a thirty-day prescription for Loritab. *Id.* He alleges that this prescription was discontinued upon his return to the South Dakota State Penitentiary by "X" Saloum and that he was told to continue use of Tylenol and Ibuprofen. *Id.* at 17. After several days of extreme pain, Doe's Tylenol prescription was increased, which did not provide relief, and he was not provided any other treatment or medication. *Id.* Doe brings these claims against Correctional Health Services, DOH, DOC, Saloum, Top, Carpenter, and Unknown Correctional Health Services Employees.[8] *See id.* at 17-18.

### e.   Cold Sensitivity

Doe claims that he suffers from severe pain in his extremities when the temperature is below 65 degrees Fahrenheit. *Id.* at 18. He alleges that he has been issued gloves, thermals, extra socks, and extra bedding to help with this condition. *Id.* at 19. But upon his return to the South Dakota State Penitentiary, he was not allowed these items, nor was he allowed them at the prison. *Id.* Because these items are classified as comfort care, Doe cannot

---

[7] Doe's complaint describes this surgery as being on his right shoulder. *Id.* But this description falls under the "Left Shoulder" section of the complaint, and from Doe's descriptions of issues in each shoulder, this surgery is likely to have been on his left shoulder. *See id.* at 14-18.

[8] Doe seeks relief from "unknown participants of this claim." Docket 5 at 18. He does not name "unknown participants" as a defendant, but he does name "Unknown Correctional Health Services Employees." *See id.* at 1-7. Thus, this court will treat claims against "unknown participants" as claims against "Unknown Correctional Health Services Employees."

receive them from Correctional Health Services, but because he needs them for a medical issue, non-medical staff refuse to issue them without a medical order. *Id.* Doe also claims that medical professionals have told him this issue is caused by low vitamin and mineral levels in prison meals. *Id.* Doe brings these claims against Correctional Health Services, Young, Fluke, Reyes, Schieffer, Doyle, and Schryvers. *Id.*

### f.   Boxer Briefs

Doe claims that he suffers from inner thigh chaffing caused by his boxer shorts and pants provided by the DOC. *Id.* at 21. He claims that he has a medical order from February 2014 providing him with boxer-brief underwear to address this issue. *Id.* He alleges that Correctional Health Services has refused to re-issue this order at both the South Dakota State Penitentiary and the prison. *Id.* As above, he alleges that staff at the prison refuse to issue boxer-brief underwear without a medical order, and Correctional Health Services refuses to issue comfort care items. *Id.* Doe brings these claims against Correctional Health Services, DOC, Schryvers, Doyle, Reyes, Fluke, Carpenter, and Young. *See id.* at 21.

### g.   Comfort Care Memo

Doe claims that the comfort care item policy requires inmates to provide confidential medical information to DOC employees who are not medical personnel and that the policy is designed to deny relief. *Id.* at 23-25. Doe brings these claims against Young, DOC, DOH, Correctional Health Services, Fluke, Dreiske, Reyes, and Carpenter. *See id.* at 25.

### 2.      Sanitation

#### a.      Flies in the Dietary Building

Doe claims that several conditions at the prison are unsanitary. *Id.* at 25-42. He claims that the Dietary Building at the prison has a large infestation of flies every year, with flies in the food storage area, the food service area, and the dining areas. *Id.* at 25. He alleges that flies get in food, utensils, cups, and other surfaces in the Dietary Building and that on some days, the flies number in the thousands. *Id.* He claims that this is caused by the lack of a proper primary air handling system and by several doors at the facility being kept open to the outdoors. *Id.* at 25-26. Doe brings these claims against DOC, DOH, Correctional Health Services, Fluke, Reyes, Schieffer, and Summit Foodservice. *Id.* at 26.

#### b.      Floors of the Dietary Building

Doe claims that the floors in the Dietary Building are filthy and unsanitary. *Id.* at 28. He claims that the floors were originally light grey but are now black and sticky. *Id.* He alleges that the floors cannot be mopped clean because of the extent of the problem and that attempting to clean one small area of the floor proved fruitless even after changing the mop water ten times. *Id.* at 28-29. Doe brings these claims against DOC, DOH, Correctional Health Services, Fluke, Reyes, Schieffer, and Summit Foodservice. *Id.* at 29.

#### c.      Air Handling System

Doe claims that the primary air handling system in the Dietary Building is inadequate. *Id.* at 31. He claims that there is no air filtration, resulting in

visible lint, dust, and hair in the air. *Id.* He also claims that the system contains inflatable ducts that deflate when the system shuts down due to a fire alarm, and the ducts reinflate and send lint, dust, and hair into the air when the alarm is cleared. *Id.* Doe alleges that the system does not have climate control and that doors to the building are opened while fans blow through the building, worsening the problem. *Id.* He also alleges that the secondary air handling system consists of only a few exhaust fans and wall mounted fans that do not solve the problem. *Id.* at 32. He acknowledges that the serving area has an air conditioning system but claims that it has little or no filtration, resulting in dust, lint, and hair on all high surfaces. *Id.* Doe brings these claims against DOC, Schieffer, and Fluke. *See id.* at 32-33.

### d.    Utensils and Tables

Doe claims that the utensils and tables in the Dietary Building are unsanitary and go uncleaned, resulting in illnesses among inmates. *Id.* at 33. He claims that the aluminum tables are made up of grooved planks, which allows for food and drink particles to build up between the planks and in the grooves. *Id.* at 33-34. He alleges that the tables have been unsanitary for years and cannot be sprayed down because of a lack of floor drains and cannot be removed and sprayed down without disassembling them entirely. *Id.* He also alleges that supposedly clean utensils have food particles and stains on them and that this could be prevented if the prison used better cleaning and dishwashing procedures. *Id.* at 35. Doe brings claims regarding dining tables

against Fluke, Schieffer, and Reyes and claims regarding utensils against Fluke, Schieffer, Reyes, and Summit Foodservice. *Id.* at 34, 36.

### e.    Laundry

Doe claims that James Henry created a laundry policy in 2021 that allows inmate laundry workers to refuse to do inmates' laundry if those inmates put sheets or blankets inside their mesh laundry bags. *Id.* at 37. Doe claims that there have been many issues with inmate laundry workers stealing clothing out of laundry bags and that the prison takes no responsibility for stolen items. *Id.* As a result, Doe alleges that it is a common practice for inmates to place clothing items inside pillowcases or other washable items to hide them from inmate laundry workers. *Id.* Doe alleges that on April 27, 2021, his clothing was not washed because he hid a sweatshirt inside a pillowcase, even though pillowcases are not sheets or blankets. *See id.* at 37-38. He brings these claims against Henry, Voigt, Schieffer, and Fluke. *Id.* at 38.

### f.    Paper Towels

Doe claims that paper towels were removed from restrooms in the living units at the prison in 2011. *Id.* at 39. He claims that he has been trying to have paper towels returned to inmate restrooms during the COVID-19 pandemic, but he has not been successful. *Id.* at 39-40. He also claims that he was told to submit a project application to have paper towels returned to the inmate restrooms, but this application was rejected. *Id.* at 40. As an obese former smoker who has had tuberculosis, Doe is especially worried about the pandemic. *Id.* Doe alleges that the prison handled the pandemic poorly,

11

resulting in nearly every inmate contracting the virus, and that the lack of disposable paper towels contributed to this result. *Id.* He also claims that the showers are moldy because of improper sanitation. *Id.* at 75. Doe brings these claims against Schieffer and Fluke. *Id.* at 40.

### 3.    Inmate Correspondence Policy

Doe claims that the DOC inmate correspondence policy is facially unconstitutional. *Id.* at 42. He claims that the policy bans envelopes that are not white, that use envelope sealers or tape, and that have return address labels. *Id.* Doe also claims that unused postage stamps, unused envelopes, commercial greeting cards, blank paper, postcards, and colored paper are also banned. *Id.* He alleges that incoming mail from the DOC is not considered privileged legal correspondence unless it is marked as such, and as a result, this mail is opened before it reaches him and other inmates. *Id.* He also alleges that outgoing mail addressed to the NAACP, the Bureau of Indian Affairs, and other organizations has not been considered privileged legal correspondence. *Id.* Doe brings these claims against DOC, Reisch, Fluke, and Schieffer. *See id.* at 42-44.

Doe claims that the policy is also unconstitutional as applied. *Id.* at 44. He claims that mailroom staff at the prison reject incoming correspondence printed on cardstock, including business cards from Bethel University and correspondence from Southeast Technical college, despite there being no written prison policy banning cardstock or business cards. *Id.* He also claims that the prison has rejected folders from Bethel University despite there being

12

no policy against folders. *Id.* Doe alleges that the prison provides folders to inmates for several purposes, including religious purposes, and that the prison allows business cards to be handed out by visiting politicians, religious leaders, and others. *Id.* Doe claims that inconsistent application of this policy is unconstitutional. *See id.* He brings these claims against Fluke, Schieffer, and Charissa Warembourg. *Id.* at 45.

### 4.    Administrative Remedy Process

Doe claims that the administrative remedy process in the prison is insufficient. *Id.* at 46-55. He claims that grievance responses are sent through the mail, allowing prison staff to read grievances that may involve confidential medical information, other inmates, or the prison staff in question. *Id.* at 46. He also claims that this allows prison staff to delay delivery of responses, reducing the amount of time inmates have to appeal responses. *Id.* He alleges that responses are placed between the bars of an inmate's cell overnight, allowing other inmates to take the responses. *Id.* Doe brings these claims against DOC, Young, Fluke, Maturan, and Schieffer. *Id.* at 47.

Doe claims that prison staff fail to properly date grievance receipts on the day they are received, instead waiting to date grievances and sometimes failing to date grievances at all. *Id.* at 48. Doe claims that this delay reduces his and other inmates' time to appeal grievance responses and has even eliminated his ability to appeal entirely. *Id.* He also claims that this is a problem not only at the prison but throughout the DOC system. *Id.* He alleges that while prison staff misdate receipts and miss their own deadlines for responding to

grievances, they still strictly apply filing deadlines to inmates. *Id.* at 48-49. Doe brings these claims against DOC, Fluke, Young, Schieffer, Dreiske, Maturan, and Voigt. *See id.* at 48-49.

Doe claims that grievances are improperly rejected based on false claims by prison staff, improper timeline calculations, and incorrect reasons that are not authorized by policy. *Id.* at 51. He claims that Maturan exceeded her authority in changing the response timeline policy to reduce his and other inmates' ability to file grievances and appeal responses. *Id.* He alleges that Schieffer has rejected grievances by falsely claiming that grievances filed by Doe were duplicates, that multiple issues were addressed in each grievance, and that certain issues should have been addressed through project applications rather than grievances. *Id.* at 52. He also alleges that Schieffer waits until deadlines have passed to issue these rejections, preventing him from appealing. *Id.* Doe brings these claims against DOC, Reisch, Fluke, Young, Dreiske, Maturan, Schieffer, and Voigt. *See id.* at 52-53.

Doe claims that the administrative remedy process is unconstitutional as applied at the prison because prison staff repeatedly fail to investigate grievances. *Id.* at 54. Doe also claims that responses are often written by the subjects of grievances themselves, rather than the prison staff member who claims to be responding to the grievance. *Id.* at 54-55. Doe alleges that prison staff members merely sign grievance responses written by the subject of those grievances. *Id.* He brings these claims against DOC, Reisch, Fluke, Schieffer,

Young, Maturan, and Voigt. *Id.* at 54-55. Doe does not seek money damages for these claims. *See id.*

### 5. Computer Use

#### a. Printing Charges

Doe claims that prison staff have implemented policies regarding computer use for legal research and filings that have restricted his access to the courts. *Id.* at 55-64. He claims that the prison charges five cents per printed page and that this was reduced from twenty-five cents in November 2018. *Id.* at 56. Doe alleges that the DOC policy only provides for charging for photocopies, not printing, and that the South Dakota State Penitentiary does not charge for printing, but he and other inmates still face these charges when printing at the prison. *Id.* Doe also alleges that he makes forty cents an hour at his prison job, with some inmates making twenty-five cents an hour. *Id.* at 57. He notes that he has written about this issue to Mike Leidholt,[9] who was the Secretary of Corrections at the time of some of the alleged incidents. *See id.* Doe brings these claims against DOC, Reisch, Fluke, Schieffer. *Id.* at 58.

#### b. Absences

Doe claims that inmates who type legal documents, as allowed by the DOC's Inmate Access to Courts policy, are treated as unexcused absences from work, academic programming, and vocational programming. *Id.* He claims that

---

[9] Although Doe names Leidholt as a defendant in his individual and official capacity, he makes no mention of Leidholt in his complaint other than the single reference to writing him about printing charges. *See* Docket 5. He does not request relief from Leidholt on this issue. *See id.* at 57-58. Thus, there are no claims brought against Leidholt, and he is dismissed from this suit.

he has been told to handwrite legal documents instead. *See id.* He also claims that Fluke and Schieffer schedule legal typing sessions when inmates are scheduled for work or programs, resulting in unexcused absences. *Id.* at 59. He alleges that he is filing this complaint a year later than intended because of this policy and that he has lost the ability to pursue some claims because of the delay. *Id.* He also alleges that he asked to be allowed to use a laptop in his cell, noting that inmates who work in certain parts of the South Dakota State Penitentiary are allowed to do so, but this was rejected. *Id.* at 59-60. Doe brings these claims against DOC, Fluke, Schieffer, Voigt, and Reisch. *Id.* at 61.

### c.    Overdrawn Balance Policy

Doe claims that prison policy only allows prisoner accounts to be overdrawn by two dollars, preventing him from making photocopies necessary to pursue claims. *Id.* at 61-62. He claims that his average monthly deposits have been over $140 and that he should have been allowed to further overdraw his account. *Id.* at 62. Doe brings these claims against DOC, Fluke, and Voigt. *Id.* at 61. Doe does not seek money damages for these claims. *See id.*

### d.    Prisoner Trust Account Report Charges

He also claims that, as per DOC policy, inmates are charged fifty cents per prisoner trust account report, even though individual pages are only five cents. *See id.* at 64. He alleges that twelve sheets of paper have cost him three dollars because of this policy, rather than the sixty cents it would be at five cents a page. *Id.* He also alleges that he had to print two extra months of

16

account statements because of prison delays, costing him an extra dollar. *Id.* Doe brings these claims against DOC and Reisch. *Id.* at 65.

### 6.    Tablet Use

Doe claims that the DOC provides inmates with access to legal research through the use of Global Tel Link Inspire tablets equipped with LexisNexis and that these tablets have issues that prevent inmates from performing legal research. *Id.* at 62-64. Specifically, he claims that the network is often down, that the tablets have slow speeds, and that the tablets do not provide case law from other states or from Circuit Courts in South Dakota. *Id.* at 62. He claims that this case law is often cited by opposing attorneys and by courts themselves, but inmates cannot access it. *Id.* He also claims that inmates are not allowed to access tablets while in the Legal Typing room of the prison. *See id.* at 63. Doe brings these claims against DOC and Global Tel Link. *Id.* Doe does not seek money damages for these claims. *See id.*

### 7.    Nutrition

Doe claims that Summit Food Service often runs out of certain food items and makes substitutions of lesser quantity and nutritional value. *Id.* at 65-68. He claims, for instance, that on October 19, 2020, Summit ran out of eight-ounce servings of Italian meat sauce and six-ounce servings of rotini and substituted one-ounce servings of peanut butter and one-half-ounce servings of jelly. *Id.* at 65. Doe alleges several other similar instances. *Id.* at 65-66. He also alleges that prison staff refuse to address this issue and that he was told these substitutions met nutritional requirements. *Id.* at 66. He claims that

17

insufficient nutrition is exposing him and other inmates to health risks, including compromised immune systems and deterioration of the bones and joints. *Id.* at 67. Doe brings these claims against DOC, Fluke, Reisch, and Summit Foodservice. *Id.* at 67-68.

### 8.      Lack of Adequate Training

Doe claims that staff at the prison lack adequate training because of indifference from Fluke and Voigt, inadequate staffing levels, lack of standards, and indifference from the training officer. *Id.* at 68-70. He claims that staff confiscate items that are allowed, including items that arrive in the mail, because they are not properly trained. *Id.* at 69. He also claims that staff often dispose of these items and that a complaint was rejected after staff confiscated several items and only one was returned, twenty-four hours later. *Id.* Doe alleges that the administrative remedy process is ineffective because of improper training. *Id.* at 69-70. He brings these claims against DOC, Reisch, Fluke, and Voigt. *Id.* at 70. Doe does not seek money damages for these claims. *Id.*

### 9.      Sex Offender Management Program Policy

Doe claims that the Sex Offender Management Program is unconstitutional both on its face and as applied. *Id.* at 70-72. Specifically, Doe objects to the use of polygraph tests to determine if those on suspended sentence supervision can remain in the community on supervised release. *Id.* at 70. He alleges that the DOC, Brenna Carlson, and the Parole Board give great weight to the opinions of polygraph examiners when making decisions

18

without giving him fair warning as to what a "policy driven response" or "standardized polygraph treatment responses" are. *Id.* He also alleges that he and other individuals are required to disclose potentially incriminating matters, unrelated to their convictions, that could result in an automatic loss of liberty upon disclosure. *Id.* at 71. He claims that refusal to make such disclosures can result in termination of treatment. *Id.* Doe brings these claims against DOC, Reisch, Carlson, and the Parole Board. *Id.* at 71-72.

### 10. Parole Policy

Doe claims that a DOC and Parole Board policy has denied his right to parole hearings capable of granting him release. *Id.* at 72-74. He claims that, under this policy, certain inmates can only be granted parole or a return to suspended sentence supervision if a Parole Board panel of one to three members recommends that the full board grant a later hearing. *Id.* at 72. He alleges that this full board hearing is the only opportunity for release for certain inmates. *Id.* at 72-73. Doe claims that the smaller panel does not have the power to grant release but that it does have the power to deny release, resulting in panel hearings that do not satisfy state-law requirements regarding the frequency of parole hearings. *Id.* He specifically claims that February 2019 was the last time he had a parole hearing where the grant of release was possible. *Id.* at 73. Doe brings these claims against DOC and the Parole Board. *Id.* Doe does not seek money damages for these claims. *See id.* at 73-74.

### 11.    Overcrowding and Understaffing

Doe claims that the prison is overcrowded and understaffed, resulting in dangerous conditions. *Id.* at 74-76. He claims that one housing unit has been shut down and that classes, worksites, and recreational activities are often cancelled because of insufficient staff numbers. *Id.* at 74. He also claims that a fight in the Dietary Building lasted for over two minutes because the minimal number of staff members present failed to notice it. *Id.* He alleges that, after the fight, there were only three officers present to cover two units with over 400 inmates. *Id.* He also alleges that overcrowding results in food shortages, an inability to follow safe pandemic protocols resulting in nearly all inmates getting sick, and the commissary running out of many items. *Id.* He claims that housing units are running at 150% capacity and that staff fail to supervise medication distribution lines. *Id.* at 75. He also claims that the overcrowding is made worse by the Parole Board's handling of inmates on suspended sentences and certain other inmates. *Id.* at 76. Doe brings these claims against DOC, Fluke, and the Parole Board. *Id.* Doe does not seek money damages for these claims. *See id.*

### 12.    Sex Offender Assessment Issues

Doe claims that prison staff improperly administered screenings and assessments designed to evaluate his risk of recidivism. *Id.* at 76-81. He claims that he had an ABEL Assessment where he was shown several pictures and asked to rate whether they evoked "strong sexual attraction, slight sexual attraction, slight sexual repulsion, strong sexual repulsion," or a neutral

reaction. *Id.* at 77.  Doe alleges that Mark Stoebner instructed him to avoid choosing neutral responses because there would always be at least some attraction or repulsion in his mind. *Id.* Doe alleges that he followed Stoebner's instructions and chose "slight sexual attraction" for several images that evoked no response from him. *Id.* Doe claims that, during a later Pre-Release Psychosexual Assessment, he learned that these "slight sexual attraction" responses were a factor in his ABEL Assessment results. *Id.* For instance, Doe claims that choosing "slight sexual attraction" for an image of an individual through a window resulted in Doe being found to have an arousal response to voyeurism. *Id.* Doe claims that this is inaccurate. *Id.*

Doe claims that Sex Offender Management Program John Doe[10] misrepresented and falsified his responses during his Pre-Release Psychosexual Assessment. *Id.* Doe claims that he was told during sex offender treatment to never say that he has been cured and to always acknowledge that there is a risk of reoffending. *Id.* at 77-78. Doe alleges that he was asked by Sex Offender Management Program John Doe whether he would reoffend if he were alone with an individual and could do so without being caught. *Id.* at 78. Doe alleges that his response was that he had no plans or intentions to reoffend, but because he was told never to say he was cured, there was a possibility that

---

[10] Doe refers to this defendant as "unknown Defendant" throughout his complaint. Docket 5 at 77-78, 80. He names John Doe, an "Unknown Contractor for Sex Offender Management Program[,]" as a defendant. *Id.* at 7. Thus, this court will treat claims against "unknown Defendant" as claims against John Doe. To avoid confusion, this court will refer to the John Doe defendant as Sex Offender Management Program John Doe.

he would reoffend. *Id.* Doe claims that Sex Offender Management Program John Doe reported his response to this question as stating that he would reoffend if given the chance. *Id.* Doe claims that this impacted his supervision, chance for release, assessed risk factor, right to receive mail, and classification. *Id.* Doe also claims that he has filed grievances on this issue seeking new assessments and evaluations, but he was told this would only happen if a Parole Board panel recommended him to the full board for a parole hearing. *Id.*

Doe claims that Stoebner and the Parole Board required him to fill out a sexual history polygraph booklet and take a test in order to be considered for parole. *Id.* at 80. He claims that he would have no chance at parole if he had not done so. *Id.* He alleges that this booklet contained private, confidential information, but either Stoebner or Carlson entered the information from the booklet into a database where personnel other than those associated with his treatment could access it without any sort of release from Doe. *Id.* at 80-81. Doe brings these claims against DOC, Stoebner, Chuck Gilchrist, Carlson, Schieffer, Fluke, and Sex Offender Management Program John Doe. *Id.* at 78, 80-81.

### B.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts

supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C.    Legal Analysis

#### 1.    Claims Against the State of South Dakota

Doe brings claims against DOC, DOH, Correctional Health Services, and the Parole Board. Docket 5 at 2-3, 5. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines powers created by state law, the degree of autonomy and control, and whether it is funded by the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985).

According to South Dakota statute, the DOC and DOH were created by the state legislature. *See* SDCL §§ 1-15-1.2, 34-1-1.1. Correctional Health Services is a division of the DOH. *See Correctional Health Care*, S.D. Dep't of Health, https://doh.sd.gov/corrections (last visited Jan. 30, 2022). The Parole Board is a division of the DOC. *See* SDCL § 24-13-3. DOC, DOH, Correctional Health Services, and the Parole Board are arms of the state of South Dakota and, as such, are not subject to suit under § 1983. Doe's claims against DOC, DOH, Correctional Health Services, and the Parole Board are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 2.    Official Capacity Claims for Money Damages

Doe brings claims against all individual defendants in their official capacities. Docket 5 at 1-7. All individual defendants are employees of the state of South Dakota. *See id.* "[A] suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Here, Doe requests both money damages and injunctive relief. The state of South Dakota has not waived its sovereign immunity. Thus, Doe's claims for money damages against all individual defendants in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3.  Official Capacity Claims for Injunctive Relief and Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for

25

> an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Doe's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### a.    **Medical Issue Claims**

Doe brings claims against Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Correctional Health Services Jane Does 1 and 2, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, and Unknown Correctional Health Services Employees, in their official and individual capacities, for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 1-5, 8-25. He also brings these claims against Young in his individual capacity and Dan Sullivan in his official capacity. *See id.* at 5. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate

26

medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (citation and internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Doe alleges sufficient facts to state a claim for deliberate indifference to serious medical needs. He has claimed that he has several serious medical needs and that various prison officials were aware of and deliberately disregarded those needs. Although some of his claims may be mere

disagreement with treatment decisions, the court cannot conclude that Doe's claims are wholly without merit. Thus, his claims against Fluke, Carpenter, Hamilton, Doyle, Reyes, Doug Clark, Correctional Health Services Jane Does 1 and 2, Sullivan, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, and Unknown Correctional Health Services Employees in their official capacities for injunctive relief survive § 1915A screening.

In order to state a claim against defendants in their individual capacities, Doe must allege that defendants participated in the unconstitutional conduct under *Ashcroft.* Doe does allege that each individual defendant participated in unconstitutional conduct regarding his serious medical needs. *See* Docket 5 at 8-25. Thus, his claims against Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Correctional Health Services Jane Does 1 and 2, Young, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, and Unknown Correctional Health Services Employees in their individual capacities survive § 1915A screening.

### b.    Conditions of Confinement Claims

Doe brings claims against Fluke, Reyes, Schieffer, and Henry in their individual and official capacities and against Voigt in her official capacity for conditions of confinement that violate his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 1-2, 6, 25-42. He also brings this claim against Summit Foodservice.[11] *Id.* at 6-7, 26, 29, 36. Construed liberally,

---

[11] Summit Foodservice is a private company that has contracted with the state. Thus, it acts under color of state law when providing food services in the prison

his claims for insufficient nutrition and for overcrowding and understaffing are also conditions of confinement claims. *See id.* at 65-68, 74-76. Doe brings these claims against Fluke in his individual and official capacity, against Reisch in his individual capacity, against Clark in his official capacity, and also against Summit Foodservice. *See id.* at 1, 3, 6-7; 68, 76.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The United States Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation omitted). In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth

---

and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42, 56 n.14 (1988).

Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989).

Doe alleges sufficient facts to state a claim for conditions of confinement in violation of his Eighth Amendment rights. The cumulative effect of the alleged prison conditions is sufficiently serious to deprive Doe of "the minimal civilized measures of life's necessities" under *Hudson*. Further, he alleges that defendants were aware of and deliberately indifferent to the deprivation. Doe claims that each individual defendant participated in the unconstitutional conduct. Thus, his conditions of confinement claims against Fluke, Reyes, Schieffer, Henry, Voigt, and Clark in their official capacities for injunctive relief, against Fluke, Reyes, Schieffer, Henry, and Reisch in their individual capacities, and against Summit Foodservice survive § 1915A screening.

### c.    Inmate Correspondence Policy Claims

Doe brings claims against Fluke, Schieffer, and Warembourg in their individual and official capacities, against Reisch in his individual capacity, and against Clark in his official capacity for violating his First Amendment rights through the use of an allegedly unconstitutional correspondence policy and through unconstitutional enforcement of that policy. *See* Docket 5 at 1-3, 5, 42-45. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological

objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Because defendants have not yet had an opportunity to identify a legitimate penological interest behind the prison correspondence policy, this court cannot say that Doe's claims are wholly without merit. Doe alleges that each individual defendant participated in the unconstitutional conduct. Thus, his claims against Fluke, Schieffer, and Warembourg in their individual capacities and official capacities for injunctive relief only, against Reisch in his individual capacity, and against Clark in his official capacity for injunctive relief survive § 1915A screening.

### d. Administrative Remedy Process Claims

Doe brings claims against Fluke, Dreiske, Schieffer, and Maturan in their individual and official capacities, against Reisch and Young in their individual capacities, and against Clark, Sullivan, and Voigt in their official capacities for implementing and carrying out an administrative remedy process that violates his Fourteenth Amendment due process rights. *See* Docket 5 at 1-5, 46-55. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation). In *Buckley*, the Eighth Circuit Court of Appeals explained that a prison grievance procedure "is a procedural right

31

only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *Id.* (quotation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (citing *Buckley* for the proposition that "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Here, Doe alleges that the way grievances are processed or remedied violates his due process rights, but this alone does not rise to the level of a constitutional violation. While he also claims that prison staff and other inmates are able to read the contents of confidential or sensitive grievances, he does not allege specific facts to show a constitutional injury caused by these practices. Thus, Doe's administrative remedy process claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### e.    Computer Use and Tablet Claims

Doe brings claims against Fluke and Schieffer in their individual and official capacities, against Reisch in his individual capacity, and against Clark and Voigt in their official capacities for implementing and carrying out a computer use policy that restricted his First Amendment right to access the courts. *See* Docket 5 at 1-3, 55-62, 64-65. He also brings an access to the courts claim against Global Tel Link[12] for various issues with Global Tel Link

---

[12] Global Tel Link Corporation is a private company that has contracted with the state. Thus, it acts under color of state law when providing tablets for legal research in the prison and can be sued under § 1983. *See West*, 487 U.S. at 56 n.14.

tablets used to access caselaw. *Id.* at 6, 62-64. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Lewis*, 518 U.S. at 353).

Doe successfully states a claim for a violation of his First Amendment right to access the courts. Specifically, he alleges that the computer use policies and tablet issues have prevented him from including some claims in his § 1983 complaint. *See* Docket 5 at 59. Doe alleges that each individual defendant participated in the unconstitutional conduct. Thus, his right to access the courts claims regarding computer use against Clark, Fluke, Schieffer, and Voigt in their official capacities for injunctive relief, against Reisch, Fluke, and Schieffer in their individual capacities, and against Global Tel Link survive § 1915A screening.

### f.      Lack of Adequate Training Claims

Doe brings claims against Reisch and Fluke in their individual capacities and against Clark and Fluke in their official capacities, alleging that certain constitutional deprivations were caused by a failure to adequately train prison employees. *Id.* at 1, 3, 68-70. He also brings this claim against Voigt in her official capacity. *See id.* at 70. Under *Parrish*, a supervisor can be liable when

33

"his failure to train or supervise the offending actor caused the deprivation." 594 F.3d at 1001 (quotation and footnote omitted). But this liability requires that there be an underlying deprivation. *See id.*

Here, Doe fails to allege an underlying deprivation. He alleges that prison employees have deprived him of his property rights and right to administrative remedies because of inadequate training. Docket 5 at 69-70. Under the Fourteenth Amendment, a "State [cannot] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. But even an intentional deprivation of property does not state a due process claim under the Fourteenth Amendment if there is an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. As described above, the administrative remedy process "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley*, 997 F.2d at 495 (quotation omitted). Thus, Doe's lack of adequate training claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### g.    Sex Offender Management Program Policy Claims

Doe brings claims against Carlson, Stoebner, Gilchrist, Schieffer, and Sex Offender Management Program John Doe in their individual and official capacities, against Reisch in his individual capacity, and against Clark in his official capacity, arguing that certain Sex Offender Management Program policies violate his Fourteenth Amendment right to due process, his Fifth

Amendment right to be free from self-incrimination, and his right to privacy under the Fourth Amendment and the Health Insurance Portability and Accountability Act (HIPAA). *Id.* at 1-3, 6-7, 70-72, 76-81.

### i.      Fourteenth Amendment Claims

Doe's Fourteenth Amendment claims stem from his allegations that defendants unconstitutionally required him to self-incriminate in order to participate in the Sex Offender Management Program, provided incorrect instructions for sex offender assessments in order to generate results that would harm his parole eligibility, and lied as to some of his responses in assessments. *Id.* at 70-72, 76-80. The Eighth Circuit has explained that "a state may create a liberty interest in parole by enacting a statute which instills in an inmate an 'expectancy of release.' " *Dace v. Mickelson*, 816 F.2d 1277, 1279 (8th Cir. 1987) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)). In order to create such an expectancy, the statute must list criteria for release and then "*require* release upon satisfaction of the substantive criteria listed." *Id.* at 1280.

SDCL § 24-15A-38 governs grants of parole for inmates who committed crimes after July 1, 1996.[13] SDCL § 24-15A-3. This statute does not afford discretion to the Parole Board:

---

[13] Doe does not indicate whether he is imprisoned for a crime committed before or after July 1, 1996. *See* Docket 5. In another portion of his complaint pertaining to parole policies, he refers to "certain individuals like the Plaintiff, other inmates situated like him, and those convicted of crimes committed prior to July 1, 1996[,]" suggesting that he is differently situated than inmates who committed crimes prior to July 1, 1996. *See id.* at 72. The South Dakota Department of Corrections Offender Locator lists Doe as being sentenced on

> Each inmate *shall* be released from incarceration to parole supervision, without a hearing with the board, at the time of the inmate's initial parole date, if the inmate has substantively met the requirements of the individual program directive established by the department, agreed to the conditions of supervision and has an approved parole release plan.

§ 24-15A-38 (emphasis added). Thus, Doe has a liberty interest in his parole proceedings protected by the Fourteenth Amendment. Doe alleges that each individual defendant participated in the unconstitutional conduct. Doe's Fourteenth Amendment claims regarding self-incrimination, deliberately incorrect assessment instructions, and false assessment information against Carlson, Stoebner, Gilchrist, Schieffer, Fluke, and Sex Offender Management Program John Doe in their individual and official capacities, against Reisch in his individual capacity, and against Clark in his official capacity survive § 1915A screening.[14]

Doe also claims that his Fourteenth Amendment right to due process was violated because the conditions imposed by the Sex Offender Management Program were not explained to him in his plea agreement. Docket 5 at 71. As

---

June 19, 2007, although this is the date of sentencing, not the date that the crimes for which Doe was sentenced were committed. South Dakota Department of Corrections, https://doc.sd.gov/adult/lookup/ (last visited Jan. 30, 2022). Thus, because this court cannot say with certainty that Doe is imprisoned for a crime committed before July 1, 1996, this court will assume for screening purposes that § 24-15A-38 governs his parole.

[14] Doe also argues that the Parole Board has implemented a parole hearing policy that does not satisfy South Dakota statutory requirements and that this policy violates his liberty interest in parole hearings created by South Dakota statutes. Docket 5 at 72-74. But he only brings these claims against the DOC and the Parole Board. *Id.* His claims against both the DOC and the Parole Board have been dismissed because these defendants are immune from suit under the Eleventh Amendment.

the Supreme Court has noted, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). Further, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87 (footnote omitted). To the extent that Doe challenges his plea agreement, his exclusive remedy is a habeas corpus petition. Thus, Doe's due process claims regarding his plea agreement are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### ii.   Fifth Amendment Self-Incrimination Claims

Doe brings claims against Clark and Carlson in their official capacities and against Reisch and Carlson in their individual capacities, arguing that they violated his Fifth Amendment rights by requiring him to participate in the Sex Offender Management Program in order to receive parole. Docket 5 at 70-72. "[T]he general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case." *Entzi v.*

37

*Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion)). In *Entzi*, the Eighth Circuit noted that the *Chavez* Court "left open the possibility that a 'powerful showing' might persuade the court to expand the protection of the self-incrimination clause to the point of civil liability[.]" *Id.* at 1002 (quoting *Chavez*, 538 U.S. at 778 (Souter, J., concurring)). "[B]ut any judicially-crafted expansion of the clause typically 'should be implemented by remedies other than money damages.'" *Id.* (quoting *Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003)). Here, the court cannot say with certainty at this time that Doe's claim is not one that makes a "powerful showing" sufficient to expand the self-incrimination clause's protections under *Entzi* and *Chavez*. But because money damages are inappropriate for such an expansion, Doe's claims against Reisch and Carlson in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). His claims against Clark and Carlson in their official capacities for injunctive relief survive § 1915A screening.

### iii.    Fourth Amendment Privacy Claims

Doe brings claims against Stoebner and Carlson, in their individual and official capacities, arguing that he was required by Stoebner to fill out a sexual history polygraph booklet which was then entered into a database accessible by other prison personnel. *Id.* at 80-81. Doe alleges that Stoebner and Carlson violated his rights under HIPAA and the Fourth Amendment. *Id.* at 81. "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether

under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). The Eighth Circuit has affirmed the dismissal of § 1983 claims brought for alleged violations of HIPAA because "HIPAA does not create a private right of action." *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citations omitted). Doe cannot bring a § 1983 claim for violation of his rights under HIPAA.

Doe alleges that Stoebner and Carlson's storage of his information constituted a violation of his privacy. *See* Docket 5 at 80-81. The Eighth Circuit has noted that "a prison inmate has a far lower expectation of privacy than do most other individuals in our society" in the context of physical searches of the inmate's person. *Goff v. Nix*, 803 F.2d 358, 365 (8th Cir. 1986). To the extent that Doe had any expectation of privacy in the information provided to Stoebner in his sexual history polygraph booklet, it was not violated when that information was entered into a database that other prison personnel could access. Thus, Doe's sex offender assessment privacy claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

Thus, it is ORDERED:

1.   That Doe's claims for money damages against all individual defendants in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2.   That Doe's claims for deliberate indifference to serious medical needs in violation of his Eighth Amendment rights against Fluke, Carpenter, Hamilton, Doyle, Reyes, Correctional Health Services

Jane Does 1 and 2, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, and Unknown Correctional Health Services Employees, in their individual capacities and in their official capacities for injunctive relief only, against Clark and Sullivan in their official capacities for injunctive relief only, and against Reisch and Young in their individual capacities survive § 1915A screening.

3. That Doe's claims for conditions of confinement in violation of his Eighth Amendment rights against Fluke, Reyes, Schieffer, Henry, Voigt, and Clark in their official capacities for injunctive relief only, against Fluke, Reyes, Schieffer, Henry, and Reisch in their individual capacities, and against Summit Foodservice survive § 1915A screening.

4. That Doe's claims for an inmate correspondence policy in violation of his First Amendment rights against Fluke, Schieffer, and Warembourg in their individual capacities and in their official capacities for injunctive relief only, against Clark in his official capacity for injunctive relief only, and against Reisch in his individual capacity survive § 1915A screening.

5. That Doe's claims for computer use and tablet policies in violation of his First Amendment right to access to the courts against Fluke and Schieffer in their individual capacities and in their official capacities for injunctive relief only, against Clark, Fluke, Schieffer,

and Voigt in their official capacities for injunctive relief only, and against Reisch in his individual capacity survive § 1915A screening.

6.    That Doe's claims for Sex Offender Management Program policies in violation of his Fourteenth Amendment right to due process against Carlson, Stoebner, Gilchrist, Schieffer, Fluke, and Sex Offender Management Program John Doe in their individual capacities and in their official capacities for injunctive relief only, against Clark in his official capacity for injunctive relief only, and against Reisch in his individual capacity survive § 1915A screening, except for his claims regarding his plea agreement, which are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

7.    That Doe's claims for Sex Offender Management Program policies in violation of his Fifth Amendment right to be free from self-incrimination against Clark and Carlson in their official capacities for injunctive relief only survive § 1915A screening.

8.    That all of Doe's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

9.    That the Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Doe so that he may cause the complaint to be served upon defendants Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Clark, Correctional Health Services Jane Does 1 and 2, Young, Sullivan, Dreiske, Badure, Maturan, Schieffer, Schryvers,

41

Saloum, Top, Unknown Correctional Health Services Employees, Henry, Voigt, Warembourg, Carlson, Stoebner, Gilchrist, and Sex Offender Management Program John Doe.

10. That Doe shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Correctional Health Services Jane Does 1 and 2, Young, Sullivan, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, Unknown Correctional Health Services Employees, Henry, Voigt, Warembourg, Carlson, Stoebner, Gilchrist, and Sex Offender Management Program John Doe. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

11. The United States Marshal Service shall serve the completed summonses, together with a copy of the redacted complaint (Docket 5) and this order, upon defendants Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Correctional Health Services Jane Does 1 and 2, Young, Sullivan, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, Unknown Correctional Health Services Employees, Henry, Voigt, Warembourg, Carlson, Stoebner, Gilchrist, and Sex Offender Management Program John Doe.

12.   Defendants Fluke, Carpenter, Hamilton, Doyle, Reyes, Reisch, Correctional Health Services Jane Does 1 and 2, Young, Sullivan, Dreiske, Badure, Maturan, Schieffer, Schryvers, Saloum, Top, Unknown Correctional Health Services Employees, Henry, Voigt, Warembourg, Carlson, Stoebner, Gilchrist, and Sex Offender Management Program John Doe will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

13.   Doe will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

14.    After screening Doe's complaint, it does not appear to the court that there is good cause to allow the plaintiff to remain anonymous under the name of John Doe. John Doe is directed to file with the court in this case a motion to substitute the true name of the plaintiff for plaintiff John Doe. This will also be served on defendants with the summons and complaint. Otherwise, defendants will not have sufficient information to answer the complaint. Failure to file the motion to substitute by February 28, 2022, will result in dismissal of this entire action without prejudice.

Dated January 31, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE