# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA
## SOUTHERN DISTRICT

| KEVIN LEE HUGHBANKS, | Case No. 4:21-cv-04167-KES |
|---|---|
| Plaintiff, | |
| vs. | |
| BRENT FLUKE, Warden, Mike Durfee State Prison, Individual and Official Capacity, et al, (see section I. B. for the full list), | AMENDED COMPLAINT |
| Defendants. | |

### AMENDED COMPLAINT FOR VIOLAITON OF CIVIL RIGHTS
### 42 U.S.C. § 1983
(Prisoner Complaint)

## I. The Parties to this Complaint

### A. The Plaintiff:

| | |
|---|---|
| Name: | Kevin Lee Hughbanks |
| Inmate Identification Number: | 22448 |
| Current Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |

### B. The Defendants:

| Defendant No. 1 | |
|---|---|
| Name: | BRENT FLUKE |
| Title: | Warden |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 2 | |
| Name: | REBECCA SCHIEFFER |
| Title: | Associate Warden of Operations and Administrative Remedy Coordinator |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 3 | |
|---|---|
| Name: | ALEJANDRO REYES |
| Title: | Associate Warden of Programs and Americans with Disabilities Act Coordinator |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 4 | |
|---|---|
| Name: | LAINE SCHRYVERS |
| Title: | Former Ludeman and West Crawford Unit Manager |
| Institution: | Mike Durfee State Prison |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual |

| Defendant No. 5 | |
|---|---|
| Name: | TAMMY DOYLE |
| Title: | Barracks Unit Manager |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 6 | |
|---|---|
| Name: | SECRETARY SOUTH DAKOTA DEPARTMENT OF HEALTH |
| Title: | Cabinet Secretary |
| Institution: | |
| Address: | 600 E. Capitol Avenue |
| City, State, Zip Code: | Pierre, SD 57501 |
| Capacity: | Individual and Official |

| Defendant No. 7 | |
|---|---|
| Name: | DIRECTOR CORRECTIONAL HEALTH SERVICES |
| Title: | Director |
| Institution: | All SD DOC Locations |
| Address: | 600 E. Capitol Avenue |
| City, State, Zip Code: | Pierre, SD 57501 |
| Capacity: | Individual and Official |

| Defendant No. 8 | |
|---|---|
| Name: | CHS JANE DOE |
| Title: | Nurse |
| Institution: | Mike Durfee State Prison |

| | |
|---|---|
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 9 | |
| Name: | MARY CARPENTER |
| Title: | Medical Director |
| Institution: | All SD DOC Locations |
| Address: | ~~1412 North Wood Street~~  600 E. Capitol Ave |
| City, State, Zip Code: | ~~Springfield, SD 57062-2238~~  Pierre, SD 57501 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 10 | |
| Name: | STEPHANIE HAMILTON |
| Title: | Nurse |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 11 | |
| Name: | KELLIE WASKO |
| Title: | Cabinet Secretary South Dakota Department of Corrections |
| Institution: | All SD DOC Locations |
| Address: | 500 E. Capitol Avenue |
| City, State, Zip Code: | Pierre, SD 57501 |
| Capacity: | Official |
| | |
| Defendant No. 12 | |
| Name: | MIKE LEIDHOLT |
| Title: | Former Secretary of Corrections |
| Institution: | All SD DOC Locations |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual |
| | |
| Defendant No. 13 | |
| Name: | TIM REISCH |
| Title: | Former Interim Secretary of Corrections |
| Institution: | All SD DOC Locations |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual |
| | |
| Defendant No. 14 | |

| | |
|---|---|
| Name: | CHS JANE DOE |
| Title: | Nurse |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 15 | |
| Name: | SAM BADURE |
| Title: | Unit Manager and SDSP Prison Rape Elimination Act Coordinator |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 16 | |
| Name: | CODY HANSON |
| Title: | Former Case Manager and Current Unit Manager |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 17 | |
| Name: | MELISSA MATURAN |
| Title: | SDSP Administrative Remedy Coordinator |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 18 | |
| Name: | TAMMY TOP |
| Title: | Former Physician's Assistant |
| Institution: | South Dakota State Penitentiary |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 19 | |
| Name: | JESSICA SCHRUER |
| Title: | Unknown |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |

| | |
|---|---|
| Capacity: | Individual and Official |
| | |
| **Defendant No. 20** | |
| Name: | "X" SALOUM |
| Title: | Doctor of Medicine, Employed through Department of Health |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| **Defendant No. 21** | |
| Name: | DARIN YOUNG |
| Title: | Former Chief Warden and Director of Operations |
| Institution: | South Dakota State Penitentiary |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual |
| | |
| **Defendant No. 22** | |
| Name: | JENNIFER DREISKE |
| Title: | Former Deputy Warden |
| Institution: | South Dakota State Penitentiary |
| Address: | Unknown |
| City, State, Zip Code: | Unknown |
| Capacity: | Individual |
| | |
| **Defendant No. 23** | |
| Name: | DAN SULLIVAN |
| Title: | Warden |
| Institution: | South Dakota State Penitentiary |
| Address: | 1600 North Drive |
| City, State, Zip Code: | Sioux Falls, SD 57104 |
| Capacity: | Official |
| | |
| | |
| **Defendant No. 24** | |
| Name: | CHARISSA WAREMBOURG |
| Title: | Mailroom Officer |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip Code: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |
| | |
| **Defendant No. 25** | |
| Name: | CHUCK OR CHARLES GILCHRIST |

| | |
|---|---|
| Title: | Sex Offender Management Program Counselor/Therapist |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 26 | |
| Name: | BRENNA CARLSON |
| Title: | Sex Offender Management Program Director |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 27 | |
| Name: | MARK STOEBNER |
| Title: | Former Sex Offender Management Program Counselor/Therapist |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 28 | |
| Name: | JAMES HENRY |
| Title: | Corporal and Supervisor of Laundry |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 29 | |
| Name: | GLOBAL TEL LINK CORPORATION |
| Title: | |
| Operating At: | All South Dakota Department of Corrections Facilities |
| Address: | 3120 Fairview Park Drive, Suite 300 |
| City, State, Zip: | Falls Church, VA 22042 |
| Capacity: | Individual and Official |

| | |
|---|---|
| Defendant No. 30 | |
| Name: | SUMMIT FOOD SERVICE, LLC. |
| Title: | |
| Operating At: | Mike Durfee State Prison |
| Address: | 500 E. 52nd Street North |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 31 | |
|---|---|
| Name: | UNKNOWN CORRECTIONAL HEALTH SERVICES EMPLOYEES |
| Title: | Unknown Positions |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 32 | |
|---|---|
| Name: | SOMP JOHN DOE |
| Title: | Unknown Contractor for Sex Offender Management Program |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 33 | |
|---|---|
| Name: | TIFFANY VOIGT |
| Title: | Unit Coordinator |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 34 | |
|---|---|
| Name: | DOUG CLARK |
| Title: | Deputy Secretary of Corrections, Former Interim Secretary of Corrections, and Former Executive Director of South Dakota Board of Pardons and Paroles |
| Institution: | All SD DOC Facilities |
| Address: | 500 East Capitol Avenue |
| City, State, Zip: | Pierre, SD 57501 |
| Capacity: | Individual and Official |

| Defendant No. 35 | |
|---|---|
| Name: | GORDON SWANSON |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 36 | |
|---|---|
| Name: | KENNETH ALBERS |

| | |
|---|---|
| Title: | Parole Board Member and Former Sheriff |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 37 | |
| Name: | MARK SMITH |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 38 | |
| Name: | MYRON RAU |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 39 | |
| Name: | PAIGE WILBUR BOCK |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 40 | |
| Name: | DAVE NELSON |
| Title: | Parole Board Member and Former Prosecutor |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 41 | |
| Name: | KEVIN KRULL |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 42 | |
|---|---|
| Name: | ANNE HAJEK |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 43 | |
|---|---|
| Name: | ED LIGTENBERG |
| Title: | Parole Board Member and Former Executive Director of South Dakota Board of Pardons and Paroles |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 44 | |
|---|---|
| Name: | GREGG GASS |
| Title: | Parole Board Member |
| Institution: | All SD DOC Facilities |
| Address: | 1600 North Drive |
| City, State, Zip: | Sioux Falls, SD 57104 |
| Capacity: | Individual and Official |

| Defendant No. 45 | |
|---|---|
| Name: | JODY JESSEN |
| Title: | Correctional Officer |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 46 | |
|---|---|
| Name: | ED LOEWE |
| Title: | Lieutenant of Special Investigation Unit |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |

| Defendant No. 47 | |
|---|---|
| Name: | KIM HALVERSON |
| Title: | Summit Food Service, LLC. Director at Mike Durfee State Prison |

| Institution: | Mike Durfee State Prison |
|---|---|
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual and Official |
| | |
| Defendant No. 48 | |
| Name: | JARROD "X" |
| Title: | Former Summit Food Service, LLC. Director at Mike Durfee State Prison |
| Institution: | Mike Durfee State Prison |
| Address: | 1412 North Wood Street |
| City, State, Zip: | Springfield, SD 57062-2238 |
| Capacity: | Individual |

## II. Basis for Jurisdiction

This suit is being brought under 42 U.S.C. § 1983 against state officials and agents for

the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal

laws]"; and 42 U.S.C. § 1985 (2) for conspiring for the purpose of impeding, hindering,

obstructing, or defeating, in any manner, the due course of justice in any State, with intent to

deny to any citizen the equal protection of the laws, or to injure him or his property from

lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the

equal protection of the laws; and 42 U.S.C. § 1985 (3) conspiring for the purpose of depriving

either directly or indirectly, any person or class of persons the equal protection of the laws, or of

equal privileges and immunities under the laws, … or deprived of having and exercising any

right or privilege of a citizen of the Untied States, the party so injured or deprived may have an

action for recovery of damages, occasioned by such injury or deprivation against one or more of

the conspirators."

Defendant South Dakota's officials and departments waived sovereign immunity

pursuant to SDCL § 21-32-16 to the extent liability insurance was purchased.

Defendant South Dakota's officials and departments deprived the rights and privileges of

Plaintiff in violations of Untied States Constitution Amendments 1, 4, 5, 8 and 14. Among these

are Freedom of Speech, Access to the Courts, Privacy, Due Process, Freedom from Cruel and Unusual Punishment, Liberty interest right to be free from Pain, Equal Treatment under the law, and Due Process. Defendants listed above, also violated the corresponding South Dakota Constitutional Article VI rights, as well as state statutes.

Defendants acted under color of law in their denial of rights, privileges, and state statutes in their actions and inactions as claimed below.

## III. Prisoner Status

Plaintiff is a state prisoner, convicted of a crime committed in January 2006, where the term of incarceration expired December 4, 2016 and term of his suspended sentence began to commence.

## IV. Statement of Claims (with Requested Relief)

### A. Medical Claims

#### 1. Sleep Apnea and Acid Reflux

For many years, Plaintiff has suffered from Acid Reflux. After consulting with Correctional Health Service staff during a sick call, Plaintiff was issued a Medical Order for a Head of Bed Wedge to reduce the chance of esophageal cancer by elevating his head and neck to prevent stomach acid from entering his esophagus.

The use of the wedge was also recommended as a result of a sleep study May 8, 2019 "to avoid supine sleep". At Mike Durfee State Prison, only wood wedges have been issued, even though at the South Dakota State Penitentiary foam wedges are issued with a protective vinyl covering.

However, due to Defendants Fluke, Schieffer, and Doyle failing to take action to eliminate bed bugs and thus being reported on Dakota News Now on KSFY, KDLT, and FOX Sioux Falls

July 21, 2021 (as well as other times), Defendant Hamilton and Rachel Tycz had all inmates who were issued wedges to take them to a trailer for disposal.

Plaintiff and others were told they would not be replaced, and were given Patient Education Information for Heartburn, which includes modifications to diet and weight loss. For the most part, inmates have no control over our diet. And when an individual is more than ninety pounds overweight as Plaintiff is, the weight loss with a strict diet and exercise would take over a year. Furthermore, Defendant Summit Food Service, LLC. does not offer a high protein, high fiber, and low carbohydrates diet as is recommended by true healthcare professionals and nutritionists. Nor does the South Dakota Department of Corrections pay for or request healthy diets.

Defendants are adamant against providing any other type of wedge.

Defendants' actions display deliberate indifference and reckless disregard for Plaintiff's health and serious medical needs' Defendants are retaliating against all inmates at Mike Durfee State Prison (MDSP) by taking away the bed wedges without a replacement due to another inmate's fiancé contacting the media for such. Thereby violating United States Constitutional Amendment Eight and South Dakota Constitution Article VI § 23 by subjecting Plaintiff to cruel and unusual punishment, violating United States Constitutional Amendment One and Fourteen and South Dakota Constitution Article VI § 5 with respect to retaliation for Freedom of Speech, and while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violates United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

Defendants Fluke, Carpenter, Hamilton, Doyle, Director of Correctional Health Services, Unknown Correctional Health Services employees (CHS), South Dakota Department of Health Cabinet Secretary (DOH), Leidholt, Reisch, Clark, and Wasko are responsible for this.

Defendants are Fluke, Doyle and Reyes through inept handling of the Bed Bug infestation at MDSP; Defendants Fluke, Carpenter, Hamilton, CHS, DOH, Reisch, and Leidholt, for their knee jerk reactions to the bed bug issue by removing the bed wedges, and not providing another remedy.

All related persons would know that they must, in their roles, try to prevent situations that they have control over which may be detrimental to the health and well-being of their charges.

**REQUESTED RELIEF:**

Plaintiff requests declarative relief.

Plaintiff requests preliminary and permanent injunctive relief from Defendants of this claim in their official capacities through re-issuing a head of bed wedge that is sanitary and free of bed bugs.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through ordering them to schedule liposuction and skin reduction surgeries for Plaintiff to bring him to what they deem ideal weight for his size since they recommended weight loss in their Patient Education for Heartburn sheet they gave him.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants of this claim in their individual capacities for this issue for the physical pain suffered.

Plaintiff requests an award of compensatory damages in the amount of $500.00 from Defendants of this claim in their individual capacities for this issue refunding all of the sick call fees that they have charged Plaintiff to address this issue, and filing fees.

Plaintiff requests an award of punitive damages in the amount of $1,000.00 from Defendants of this claim in their individual capacities for the physical pain suffered.

### 1. Shoulders

#### a) Extra Pillows

For more than ten years, Plaintiff has suffered pain in both his left and right shoulders. In 2006 or 2007, a Physician's Assistant (PA) at MDSP issued a medical order for Plaintiff to be issued two additional pillows with cases, to reduce the pressure on his shoulders when lying down on compressed foam mattresses which provide little to no support or relief.

While the pillows did not always eliminate the pain he felt, the pain was decreased for most of the time he was allowed the extra pillows.

After a return to incarceration in May of 2017, Plaintiff attempted to get the pillows at SDSP, but was refused by Defendants CHS, Young, Top, Meirose, Jessica Schreurs, and CHS Jane Doe. Melissa Maturan rejected the grievance filed on the issue.

At a later time, after the multiple recommendations from Dr. Patrick O'Brien of AMG Orthopedics and Sports Medicine, and a subsequent grievance, Defendant Badure issued the pillows.

However, upon a return to MDSP in December of 2019, Defendants CHS, Doyle, Reyes, Fluke, Schieffer, and Schryvers have refused to allow Plaintiff to have the extra pillows again. CHS staff point to a memo from Defendants Carpenter and Young, a "Comfort Care Memo" (Memo), which was originally created and issued by former Warden Robert Dooley and Defendant Carpenter in February 2014. The Memo stipulates medical will not issue non-medical items such as special shoes, medical showers, extra mattresses, extra pillows, and/or blankets.

And closes with "Health Services will not address requests for comfort items or custodial issues."

CHS states it is the DOC's responsibility. The DOC states they will not issue anything without a medical order. It is a circular and ambiguous argument that is designed to prevent any assistance from Defendants, and any form of pain relief. Which has left Plaintiff suffering pain for years.

Defendant Reyes refused a properly submitted request for reasonable accommodation in his role as ADA Coordinator at MDSP.

Defendants Doyle, Schryvers, Reyes, Schieffer, Fluke, CHS Jane Doe even refuse the issuance after Dr. O'Briens' recommending the extra pillows and being provided with a copy of the authorization from Defendant Badure at SDSP.

Defendants' actions display deliberate indifference and reckless disregard for the health and well-being of Plaintiff, subjecting him to un-necessary physical pain, emotional trauma, and mental anguish as it prevents him from having any moment during the day free from the pain being at the forefront of his conscious mind (including while drafting and typing this very amended complaint as well as all other legal documents drafted, typed and submitted), and it wakes him up during sleep.

Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendment Fourteen and South Dakota Constitutional Article VI §2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

Defendants DOC, CHS, CHS Jane Doe, Young, Dreiske, Carpenter, Badure, Schreurs, and Maturan were responsible for the initial denial at SDSP. Defendant Carpenter and Young through the Comfort Care Memo; Schreurs, Dreiske, and Young through their denials during the Administrative Remedy Process; Defendant Maturan through her rejection of Administrative Remedy Request; Defendants DOC and CHS through their policy and stance on the issuance of pain relief items; and Defendants CHS, CHS Jan Doe and Badure through their initial denials, even when shown proof of previous authorizations.

Defendants Fluke, Carpenter, CHS, CHS Jane Doe, DOC, Doyle, Reyes, Schieffer, and Schryvers are responsible for their actions regarding the issuance at MDSP. Defendant Carpenter through the issuance of the Comfort Care Memo; Defendants Fluke, Reyes, and Schieffer through their denials during the Administrative Remedy Process; Defendants CHS and DOC through their policy and stance on the issuance of pain relief items; and Defendants Reyes through his denial of the request for reasonable accommodation submitted to him as ADA Coordinator.

All related persons would know that they must, in their roles, try to prevent situations that they have control over which may be detrimental to the health and well-being of their charges, and to prevent pain when it is un-necessary and reasonably preventable.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary injunctive relief from Defendants of this claim in their official capacities through the issuance of two extra pillows with pillow cases that are sanitary and free of bed bugs.

Plaintiff requests permanent injunctive relief from Defendants of this claim in their official capacities through the issuance of two extra pillows with pillow cases that are sanitary and free of bed bugs.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through the issuance of apology letters for the physical, emotional, and mental trauma and pain that Plaintiff has been forced to endure due to their conduct.

Plaintiff requests and award of nominal damages in the amount of $100.00 from the Defendants of this claim in their individual capacities for this issue for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests and award of compensatory damages in the amount of $500.00 from the Defendants of this claim in their individual capacities refunding all of the fees charged from CHS for sick calls for this issue, litigation costs, and for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests and award of punitive damages in the amount of $50,000.00 from each Defendant of this claim in their individual capacities for the knowing infliction of the physical, emotional, and mental pain and anguish in their individual capacities in this matter.

### b)    Right Shoulder Treatment

Plaintiff has continued to have pain in his right shoulder, accompanied by grinding, clicking and popping of the joint. The grinding, clicking, and popping have been noticeable upon examination by Dr. Wallinga, nurses, and the physical therapists that Plaintiff has seen regarding the issue. Plaintiff has requested treatment for his right shoulder. However, SDSP CHS staff and Dr. Mary Carpenter refused to allow the orthopedic surgeon Plaintiff saw for his left shoulder to

look at, diagnose, and treat Plaintiff's right shoulder while he was already being seen. Defendant Top told Plaintiff that it is normal to live with pain daily.

Plaintiff has continued to have pain in his right shoulder with refusals by MDSP CHS staff and Carpenter to provide any treatment for the shoulder issues other than continuing over the counter medication use of Tylenol and Ibuprofen (knowing that these medications do not provide nay relief for Plaintiff), temporary prescription for Meloxicam after head of bed wedges were taken away due to Ibuprofen contributing to acid reflux, occasional injections which have only provided temporary relief if any, and scheduling Plaintiff for physical therapy numerous times with therapists discontinuing after a couple of sessions stating that Plaintiff has full range of motion and strength, and there is nothing that they can do for the issue.

Yet CHS and Carpenter refuse to order MRI's and refuse to schedule examination by specialists to attempt to relieve constant pain. This refusal has continued as pain has gotten worse and radiates down arm with intermittent numbness and tingling from shoulder blade to finger tips.

Defendant Fluke was allowed their continuing to ignore the issue and not provide real treatment, as has Defendants Young, Dreiske and Maturan. This issue has been constant as well as the deliberate indifference to the physical pain and permanent suffering Plaintiff has been subjected to by Defendants, and being present physically and at the forefront of his mind during drafting and typing this amended complaint and former documents in this matter. As well as the mental and emotional pain and anguish that are associated with this due to their actions and inactions.

All related persons would know that they must in their roles, try to prevent situations that they have control over which may be detrimental to the health and well-being of their charges, and to prevent pain when it is un-necessary.

Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendment Fourteen and South Dakota Constitutional Article VI §2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declarative relief in this matter.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through the issuance of apology letters for the physical, emotional, and mental trauma and pain that Plaintiff has been forced to endure due to their conduct.

Plaintiff requests and award of nominal damages in the amount of $100.00 from the Defendants of this claim in their individual capacities for this issue for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests and award of compensatory damages in the amount of $5,000.00 from the Defendants of this claim in their individual capacities, refunding all of the fees charged from CHS for sick calls for this issue, litigation costs, and for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from each Defendant of this claim in their individual capacities for the knowing infliction of the physical, emotional, and mental pain and anguish in this matter, with an additional award of $150,000.00 from Defendant Fluke who is entrusted with the care of Plaintiff by law, and an additional $150,000.00 from Defendant Carpenter who has been refusing treatment.

### c) Left Shoulder

For years, Plaintiff has had severe pain in his left shoulder. CHS staff prescribed Tylenol and Ibuprofen for the treatment of the pain, even though they were told on many occasions that the medication did not provide any pain relief at all. On October 19, 2018, Plaintiff had surgery on his left shoulder by Dr. Patrick O'Brien of AMG Orthopedics and Sports Medicine. During the discharge process, Dr. O'Brien's nurse informed Plaintiff that the surgery he had was one of the most painful surgeries performed. Normally, a patient would have a catheter inserted into his shoulder that would provide morphine to the affected area. However, due to the circumstances of Plaintiff being incarcerated, that was not an option. Therefore, there is an agreement with the Department of Corrections for a prescription of Loritab to be issued to prisoners for thirty days after undergoing these procedures.

Upon Plaintiff's return to SDSP, Loritab was not issued. Without meeting or seeing Plaintiff, Defendant Saloum immediately overrode and discontinued the prescription and directed him to continue with Tylenol and Ibuprofen which provided no noticeable relief.

The refusal to do anything was continued October 20, 21, 22, 23, and 24 with reported pain of eight to nine-and-one-half out of ten. Severe, extreme, and affecting while awake and asleep. The only modification that was done was after numerous phone calls from Plaintiff's mother, Tylenol was temporarily increased from 325 mg to 500 mg tablets, still without providing pain relief.

Response to grievance Plaintiff filed stated "Dr. Saloum was consulted regarding a discharge order for your return to the facility. Dr. Saloum ordered you to continue with Tylenol, Ibuprofen, and Ice. The onsite provider was consulted and did not order Hydrocodone.

Plaintiff was un-necessarily subjected to continued, excruciating pain during the ensuing days due to the refusal of Defendants CHS, Top, and Saloum.

Defendant CHS did not have either Dr. Regier or Defendant Top examine patient and prescribe medication to relieve the pain during recovery period.

Defendants were deliberately indifferent to the pain that Plaintiff was suffering and callously and maliciously enjoined the wanton, willful, and malicious infliction of pain through their actions and inactions. No person could reasonably have believed that Tylenol and Ibuprofen would provide any form of relief for the operation that was performed.

Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI § 23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that Defendants' conduct also violated United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI §2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through the issuance of apology letters for the physical, emotional, and mental trauma and pain that Plaintiff has been forced to endure due to their conduct.

Plaintiff requests an award of nominal damages in the amount of $100.00 from the Defendants in this claim in their individual capacities for this issue for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests an award of compensatory damages of $1,000,000.00 from the Defendants Saloum, CHS, DOH, Carpenter, DOC and Unknown Correctional Health Services Employees of

this claim in their individual capacities refunding all of the fees charged from CHS for sick calls for this issue, and for the physical pain suffered, as well as the emotional and mental pain and anguish.

Plaintiff requests punitive damages in the amount of $1,500,000.00 from Defendants Saloum, CHS, DOC, Carpenter, DOC, and Unknown Correctional Health Services Employees of this claim in their individual capacities for the knowing and willful infliction of the physical, emotional, and mental pain and anguish in this matter, and refusal of any realistic form of treatment.

### 3.    Pain Sensations from Cold

For over ten years, Plaintiff has suffered severe pain from cold when the temperature is below 65 degrees Fahrenheit. The pain is primarily felt in his hands, his feet, and his calves. However, the pain radiates up his legs and his arms. The pain that is felt is similar to standing directly on ice barefoot or applying ice directly to the affected areas for extended periods of time without insulating barriers.

During the course of Plaintiff's imprisonment, he had been issued gloves, thermals, extra socks, and extra bedding to help reduce the pain associated with the issues. However, staff at SDSP discontinued the treatment after Plaintiff's discharge then return to prison, as well as MDSP staff.

Defendants CHS, Schreurs, and Young refused to re-issue the items upon Plaintiff's re-entry to SDSP in 2017, and continued to refuse during the time Plaintiff was incarcerated there through mid December of 2019.

Defendants CHS, Fluke, Reyes, Schieffer, Doyle, and Schryvers refused to re-issue items after Plaintiff's return to MDSP in mid December of 2019 and still have not issued.

Defendant CHS classifies the items as Comfort Care items thus will not issue even upon reports by Plaintiff on the constant pain he suffers in the late fall, winter, and early spring.

Defendants Schieffer and Schryvers personally know of the pain that Plaintiff suffers as Defendants Schieffer and Schryvers worked together with the former laundry supervisor to issue the items to Plaintiff during prior incarceration.

Yet Defendant Schryvers refused to re-issue as Unit Manager, stating must go through Defendant Reyes, who in turn stated it was a medical issue and he would not authorize without an order from medical. Defendant CHS stated as it is Comfort Care, it was DOC's responsibility, yet they issued medication to reduce nerve sensations that marginally reduces a small portion of the pain, yet has a side affect of making Plaintiff sweat profusely and dehydrating him. Defendant Fluke refused to issue upon Plaintiff submitting grievance.

Some of the medical professionals Plaintiff has seen have suggested that the issue is partly caused by low vitamin and mineral levels in Plaintiff due to lack of nutritious meals in prison.

Defendants conspire to deny Plaintiff any realistic relief of known pain, thus subjecting him to wanton, willful, malicious, and intentional infliction of pain and cruel and unusual punishment due to their deliberate indifference to his medical needs. Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI § 23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that Defendants' conduct also violated United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI §2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through signed apology letters for the violations of his rights.

Plaintiff requests preliminary injunctive relief from Defendants of this claim in their official capacities through issuance of six extra pairs of socks, one additional sheet, one additional blanket, six long sleeve shirts, six thermal tops, six thermal bottoms, and adequate gloves to reduce the pain that Plaintiff suffers from the sensations to cold when the temperature is below 65 degrees Fahrenheit.

Plaintiff requests preliminary injunctive relief from defendants of this claim in their official capacities through the issuance of an order for Ensure, Boost, Glucerne, or a similar product to provide Plaintiff with the vitamins and minerals that are missing from his daily diet due to DOC contract with the food service provider not paying and requiring Defendant Summit Food Service, LLC to provide meals that provide one-hundred percent of the daily recommended allowance of vitamins and minerals.

Plaintiff requests an award of nominal damages in the amount of $100.00 from the Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $10,000.00 from the Defendants in this claim in their individual capacities for this issue for the physical pain suffered, as well as reimbursing Plaintiff for all the fees charged him for sick call seeking reprieve and costs litigating and pursuing justice in this matter.

Plaintiff requests an award of punitive damages in the amount of $100,000.00 from the Defendants of this claim in their individual capacities for the physical pain suffered due to their actions and inactions.

### 4. Boxer Briefs

As an overweight individual, Plaintiff has suffered from chaffing in his inner thighs due to the friction of the thighs on the boxers and/or pants that are provided to him by the DOC. Due to his age and weight, Plaintiff also suffers pain from his testicles being compressed between his thighs, especially while sitting, causing pain and potential permanent reproductive issues. In February 2014, Dr. Mel Wallinga issued a medical order for Plaintiff to exchange his regular boxer underwear for boxer-brief underwear to reduce the chaffing issue and provide support. However, from Plaintiff's return to prison in 2017, Defendants CHS at both SDSP and MDSP refused to affirm and sustain the order that was written without an expiration date as has Schreurs. Plaintiff has gone to sick call on the matters, filed grievances, and submitted requests for reasonable accommodation. However, all have refused to affirm and sustain the order that does not expire.

At MDSP, Defendant Schryvers refused without an order, Defendant Doyle refused without an order, Defendant Reyes refused without an order, Defendant Fluke refused without an order, and Defendant CHS refuses due to the Comfort Care memo from Defendant Carpenter and Young stating that it is not their responsibility, it is DOC's.

Plaintiff has tried baby powder before DOH banned it and Gold Bond powder; however, they exacerbated the situation by causing stickiness.

Refusal to provide the boxer briefs subjects Plaintiff to unnecessary pain and suffering from the chaffing and welts that are left as a result, as well as unnecessary pain and suffering, and potentially permanent reproductive issues from testicular compression.

Defendants conspire to deny Plaintiff any realistic relief of known pain, thus subjecting him to wanton, willful, and intentional infliction of pain and cruel and unusual punishment due to

their deliberate indifference to his medical needs. Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that the Defendants' conduct also violates United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through signed apology letters for the violations of his rights.

Plaintiff requests preliminary injunctive relief from Defendants of this claim in their official capacities through the issuance of six pairs of boxer briefs that will fit Plaintiff.

Plaintiff requests injunctive relief from the Defendants of this claim in their official capacities through scheduling liposuction and skin reduction surgery to reduce the chaffing that Plaintiff suffers from.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through scheduling a scrotum tuck to reduce the pain caused from this issue and more potentially life affecting future reproductive harm/sterilization.

Plaintiff requests an award of nominal damages in the amount of $100.00 from the Defendants of this claim in their individual capacities for the physical pain suffered.

Plaintiff requests an award of compensatory damages in the amount of $1,000.00 from the Defendants of this claim in their individual capacities for the physical pain suffered.

Plaintiff requests an award of punitive damages in the amount of $1,000.00 from the Defendants of this claim in their individual capacities for the physical pain suffered.

### 5. Comfort Care Memo

Defendants Carpenter, Young and CHS re-issued a Comfort Care Memo that is designed to deny Plaintiff and other inmates relief from the physical pain they suffer.

This Memo was originally signed by Defendant Carpenter and former Warden Robert Dooley in February 2014.

With this Memo, it created a loop for the denial of treatment from both the Department of Corrections staff and Correctional Health Services staff by each pointing the finger at the other.

The Memo essentially states that any material item that relieves pain is a Comfort Care item, and it is not the responsibility of Correctional Health Services to provide, and they say need to go through Department of Corrections staff at SDSP and MDSP.

Department of Corrections staff at SDSP and MDSP repeatedly states that they will not issue any item related to pain relief without an order from Correctional Health Services staff.

Further, this Memo requires Plaintiff and other inmates to provide confidential medical information to various prison officials, who are civilians and not medical personnel, in our begging and pleading for relief. Any officer that works the desk at our unit, any officer working in medical, the unit coordinators, the unit managers, mailroom staff, associate wardens, and others have full access to the paperwork we file, which contains the confidential information.

This violates our rights to confidentiality and privacy of our medical conditions, and at the same time is a system designed to deny relief as each state it's not their responsibility.

This has also made a system that Plaintiff and other inmates suffer from pain needlessly while we have proven our pain and need for relief time after time, but Defendants use the Memo

as a shield for themselves to deny relief. Nurses at MDSP and SDSP constantly use this Memo to override their professional superiors to restrict what the contracted health care doctors can do to provide relief to their patients.

Defendants conspire to deny Plaintiff any realistic relief of known pain, thus subjecting him to wanton, willful, and intentional infliction of pain and cruel and unusual punishment due to their deliberate and callous indifference to his medical needs. Defendants' actions violate United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 by subjecting Plaintiff to cruel and unusual punishment, and while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that the Defendants' conduct also violates United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal, and violating our right to privacy and confidentiality of our medical conditions and information in violation of HIPAA, the United States Constitutional Amendment 4, and South Dakota Constitutions Article VI §11 as Plaintiff has a liberty interest right provided by United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI to keep his personal medical information private and confidential.

Defendants Young, DOC, DOH, and CHS (Carpenter) are responsible for issuing the Memo.

Defendants Young, DOC (Reisch, Leidholt, and Wasko), DOH, CHS (Carpenter), Fluke, Dreiske, Sullivan, and Reyes are responsible for the implementation of the Memo.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests injunctive relief from Defendants of this claim in their official capacities through signed apology letters for the violations of his rights.

Plaintiff requests injunctive relief from Defendants Sullivan, Clark, Fluke, Carpenter and Wasko in their official capacities by and through ordering the immediate repeal and cancellation of the "Comfort Care Memo" and further banning any similar memo from being issued afterwards.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $1,000.00 from Defendants of this claim in their individual capacities to compensate for money spent repeatedly on sick call fees, supplies, litigation and unnecessary physical, emotional and mental pain and anguish.

Plaintiff requests an award of punitive damages in the amount of $500,000.00 from Defendants CHS, Young, Fluke, Carpenter, and Leidholt in their individual capacities for the physical, emotional and mental pain and anguish caused and sustained by the creation and implementation of a knowingly unconstitutional and unlawful policy and practice to deny care.

## B. Sanitation Claims

### 1. Flies in the Dietary Building

Every year, there is a large infestation of flies in the Dietary Building at the Mike Durfee State Prison. With some days and weeks where the infestation is the worst.

The flies are in the food storage area, the food service area, and in the dining areas. They get in our food, in the beverage cambros, on the water spouts, on allegedly "clean" trays, utensils, cups and napkins. There are days where the infestations are literally in the thousands.

The lack of a proper primary air handling system as is listed in section B.3 below is one of the causes of this. The serving area has an air conditioning system that is separate from the primary system in the dining area, however, this system apparently has little or no filtration as well, as massive amounts of dust, lint, hair, and other contaminants are visible hanging from the ducts and on all high surfaces, fans are still required which blow contaminants off of the workers and other sources into the food being served, and frequently the large overhead door at the dock and the emergency exit door are open wide, allowing flies, other insects, birds and rodents into the building.

This has been brought to the attention of MDSP administration, they refuse to do anything, and Defendant Schieffer rejected a complaint in October 2020.

This occurred again in 2021.

Defendants have repeatedly shown that the sanitation and infestation is not a concern to them. When Plaintiff addressed the issue to an officer during a meal service, she said, "What do you expect me to do about it?"

Plaintiff has a constitutional right to have a food storage, preparation, service, and dining area that is free from infestations.

Defendants Fluke, Reyes, Schieffer, and the Department of Health inspectors have violated Plaintiff's right against cruel and unusual punishment by having food stored, prepared, served and consumed in environments that are unsanitary and infested with insects objectively rising to the level of a constitutional violation by depriving the Plaintiff of the minimal civilized measure of life's necessities. These are violations of United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23. And while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that the Defendants' conduct also violates United

States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

The unsanitary conditions and lack of adequate climate control allowed by Defendants DOC, DOC, CHS, Fluke, Reyes, Schieffer, Jared "X", Kim Halverson, and Summit Food Service, LLC. contribute to the infestation.

**RELIEF REQUESTED:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary injunctive relief against Defendants of this claim in their official capacity by and through having an order for Plaintiff's meals to be delivered to him in his housing unit (as is done with many other inmates) until there is a permanent fix to this problem and the building is completely pest free.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by having the dining area, food serving area, and food storage area deep cleaned.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by requiring them to install a climate control system as outlined in section B.3 of the Sanitation Claims that would alleviate the need to have all exterior doors open from 0430 hours to 1730-1800 hours when workers are finished working.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by having civilian over-site of the conditions of the food service and dining areas on a daily basis to ensure sanitary and pest free environments are maintained.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Correctional Health Services staff in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Department of Health inspectors in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendants Reisch, Leidholt, Clark, and Wasko in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Fluke in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Reyes in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Schieffer in her individual capacity.

## 2. Floors in the Dietary Building

The floors in the Dietary Building are completely filthy and unsanitary. The originally light gray concrete floors are completely black, are sticky to the point where they cause footprints and wheel prints to be left in the filth on the floor. Walking from the Dietary Building and back to the units, and to the dumpsters by the workers, have caused black tracks to completely cover the threshold plates and the concrete walkway in such layers that repeated heavy rainfall has failed to wash it away.

This has increased the infestation of flies and other insects by leaving them essentially a "neon-lit welcome sign" and pathway into the building where the food is eaten and served. Unlike regular restaurants and food service buildings, the path to the trash dumpsters goes out the front doors of the building. Doors that are rarely closed while the building is occupied during

the spring, summer and fall months due to poor building design and a lack of adequate climate control.

The floors are at the point where there is no possibility of mopping to clean the floors. While Plaintiff was employed and working in the building, while attempting to mop floors, using clean mops and fresh mop water with proper chemical solution through the installed pre-mixer, as soon as the mop was placed back into the mop bucket from just mopping a two foot by four foot section, the water was muddy. Attempting to clean a small area thoroughly through thoroughly rinsing the mop and changing the water ten different times did not cease to cause the water to be muddy, and did little effect to the floor.

Defendants DOH inspectors, CHS Director, DOC Secretaries, Fluke, Reyes, Schieffer, Schryvers, and other staff have consistently allowed this to get increasingly worse when inspecting, touring, visiting, and responding to complaints by not holding the food service company accountable.

Defendants Fluke, Reyes and Schieffer refused or ignored volunteer requests for inmates to deep clean on their own time.

Defendants have consistently ignored complaints and turn a blind eye to the unsanitary conditions and the filth, even in the heat of the COVID-19 pandemic where sanitation should have been important to them. CHS nurses have routinely responded to emergencies in the Dietary Building with these conditions (including inmates fainting or passing out due to extreme heat and humidity).

Defendant Summit Food Service, LLC, while Summit and as CBM Food Service has been the only company to occupy the dining area in the Dietary Building since its erection in 2005,

and has allowed the floors to get to the point that they are at now, while the other Defendants named in this section, as well as former counterparts, have allowed it.

Defendants' inactions through allowing this have violated Plaintiff's rights against cruel and unusual punishment by requiring Plaintiff to eat in the unsanitary environment, thus violation United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 through this. And while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that the Defendants' conduct also violates United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

### REQUESTED RELIEF:

]Plaintiff requests declaratory relief from Defendants of this claim.

Plaintiff requests preliminary injunctive relief from Defendants of this claim in their official capacities by and through having his meals served to him in his housing unit (as is done with many other inmates) until there is a permanent solution to this claim and the building is sanitary.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities by requiring the floors in the dining area, food service area, food storage areas, and from the building to the road to be deep cleaned and/or pressure washed to completely remove the filth from the floors.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacity by requiring regular weekly inspections of the Dietary Building using a checklist by MDSP administrative staff, weekly inspections by CHS personnel using a checklist, and unscheduled and unannounced inspections by the Department of Health.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities for overlooking and allowing these conditions.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against Defendant Fluke ~~in this claim~~ in his individual capacity for overlooking and allowing these conditions through negligence.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against Defendant Associate Warden or Deputy Warden, whose job it is to oversee the Dietary Building, in his/her individual capacity for overlooking and allowing these conditions through negligence.

Plaintiff requests an award of punitive damages in the amount of $100,000.00 against Defendant CHS (officers, personnel, nurses, directors and staff) in their individual capacity for overlooking and allowing these conditions through negligence.

Plaintiff requests an~~d~~ award of punitive damages in the amount of $100,000.00 against Defendant DOH Inspectors and Secretary in their individual capacity for overlooking and allowing these conditions through negligence.

Plaintiff requests an award of punitive damages in the amount of $100,000.00 against Defendant Summit Food Service, LLC, Jarod "X", and Kim Halverson in their individual capacities for overlooking and allowing these conditions through negligence.

### 3. Air Handling System

The air handling system in the Dietary building is inadequate and jeopardizes the health and well being of all who eat in there and work in their. The primary air handling system is the same style used in greenhouses and livestock barns/shelters. The primary air handling system appears to have no filtration as there is visible lint, dust, hair, as well as suspected bacteria, mold and other harmful particles in translucent and inflatable ducts/tubes that when the system shuts down

(due to fire alarm in the Dietary Building, Laundry area, or the Barracks), the ducts/tubes deflate, and when alarm is cleared, rapidly re-inflated and sending the lint, dust, hair, as well as suspected bacteria, fungus/mold and other harmful particles raining down upon those dining, being inhaled, falling into the food on the trays and into the cups of beverages.

The primary air handling system has not had a climate control system, therefore, during most days in the spring, summer, and fall, the doors to the building have been open from 0430 hours and 1730-1800 hours allowing more dust and particles into the dining area. During these days, fans are generally blowing across inmate dietary building workers and the officers supervising the dining areas, blowing their sweat, lint, fungus/mold, bacteria, hair, and skin cells into the air and into the tray sand cups of those dining in the area.

The secondary air handling system consists of a few exhaust fans that simply suck air in from the adjacent open windows and nearby open doors without taking heat and humidity out of the building, and wall mounted fans that blow the air from the high areas of the building down.

The serving area has an air conditioning system that is separate from the primary system in the dining area, however, this system apparently has little or no filtration as well, as massive amounts of dust, lint, hair, and other contaminants are visible hanging from the ducts and on all high surfaces, fans are still required which blow contaminants off of the workers and other sources into the food being served, and frequently the large overhead door at the dock and the emergency exit door are open wide, allowing flies, other insects, birds, and rodents into the building.

Plaintiff notes that after this action was originally filed, a contractor has been installing a central air conditioning system into the original system. However, it is unclear if the system will run continuously every day of the year as is in most commercial buildings, or if it will only be

operated during temperature extremes as at SDSP. And it is also unclear if a HEPA filtration system will be installed or used.

With the Global COVID-19 pandemic and other respiratory and viral illnesses, the air handling system in the Dietary Building is grossly inadequate and a massive contributor to these spreads and outbreaks, and endangers the lives of the incarcerated that are forced to eat in the building, and has caused inmates to suffer from heat stroke, and inmates to die.

When this issue was grieved, Defendant Schieffer rejected the grievance.
Defendants Fluke and Schieffer have demonstrated in this claim deliberate indifference to the health and lives of the incarcerated mass, as well as Plaintiff. Thereby violating Plaintiff's United States Constitutional Amendment Eight and South Dakota Constitution Article VI §23 through this. And while not challenging his conviction, sentence, or plea agreement in this action, Plaintiff notes that the Defendants' conduct also violates United States Constitutional Amendment Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not pare of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary injunctive relief against Defendants of this claim in their official capacity by ordering them to have Plaintiff's meals delivered to his housing unit (as is done with other inmates) pending a permanent fix to this situation.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacity by requiring the installation of ~~a climate control system~~ with HEPA filtration system in the Dietary Building to operate continuously ~~while preventing the temperature in the Dietar~~

Building from exceeding 78 degrees Fahrenheit and keeping humidity levels at a comfortable level for those working in the building.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant DOC Secretaries Leidholt, Reisch, Clark, and Wasko in their individual capacities for their roles in this claim.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant Schieffer in her individual capacity for her role in this claim.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant Fluke in his individual capacity for his role in this claim.

### 4.    Utensils and Tables in Dietary Building

a)          For years, the tables in the Dietary Building where inmates eat have been unsanitary and have been incapable of being truly cleaned and sanitary. This has allowed for inmates to contract illnesses.

The tables that the DOC, by and through MDSP administration, had installed upon completion of the building are tables manufactured for outdoor use in parks for picnics. These tables, while being aluminum, have over a dozen grooves per "plank", with three being the table top for each table. These tables have approximately an inch-and-a-half spacing between each "plank".

Due to the construction of the tables and the inability for the inmate workers to be able to effectively clean and sanitize the tables during service, there are food and drink particles and globs that have been between the "planks", on the sides and underneath for years.

The Dietary Building was not built to where it would be practical to spray down the tables between services as there are inadequate floor drains for such.

The Dietary Building was not built to where the tables could be removed and sprayed down outside of the building between services without complete disassembly.

This has made the eating conditions extremely unhealthy, and also violate the religious requirements for those Jewish and Muslim inmates (as well as other religions) who are forced to eat kosher and halal meals with pork still being present in the grooves and between the "planks", with dairy being present in the grooves and between the "planks" when eating meat, and with meat being present in the grooves and between the "planks" when eating dairy.

These conditions have been present for years, and the MDSP administration has turned a blind-eye to the situation and has ignored the issues, refusing to acknowledge same.

Defendants Fluke, Schieffer, and Reyes have been present during meal services and when not serving, and ignore the threats to Plaintiff's and other inmates' health and well being, being deliberately indifferent to same, subjecting Plaintiff to cruel and unusual punishment. These are violations of United States Constitution Amendment Eight and South Dakota Constitution Article VI § 23. As well as violating other inmates' United States Constitution Amendment One as well as the Religious Land Use of Institutional Persons Act.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief against the Defendants of this claim in their official capacity.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities by way of an order to post an apology letter to inmates on our tablets under the Food folder.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities by way of an order to replace the tables with sturdy tables with surfaces easy to clean (i.e. solid tabletop without grooves or multiple pieces to tops).

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

**b)** For years the utensils provided for inmates to use have been unsanitary. On a daily basis, inmates receiving utensils with their trays which are supposed to be clean and sanitary have food remnants on them from a previous service that are visible. Including lettuce, salad dressing, margarine, peanut butter, etc. Normally not clearly visible remnants due to orange color of utensils can be found by wiping a white napkin over them and have contaminants come off.

The primary causes are not having a tub or container with a solution of detergent and water for utensils to soak in prior to washing as is done at SDSP, not having enough utensils to have full meal services while allowing dirties to soak, and overloading the racks used to send them through the dishwasher with them piled on-top of each-other in four to five layers.

Defendants Summit Food Service, LLC., Jarrod "X", and Kim Halverson are responsible for not having enough utensils, not having a soak solution set-up, and allowing racks to be overloaded.

Defendants Fluke, Reyes, and Schieffer are responsible for turning a blind-eye to the situation and failing to respond to grievances about the issues.

Defendants of this claim have violated Plaintiff's United States Constitution's Eight Amendment, and South Dakota Constitution Article VI § 23 rights by subjecting him to cruel and unusual punishment by not providing for and requiring sanitary eating utensils, while also

being deliberately indifferent by ignoring the health threats from this through risk of salmonella poisoning and the likelihood of contributing to the spread of viruses including influenza and the coronavirus. And while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendments Five and Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants Summit Food Service, LLC. and Kim Halverson in this claim in their official capacities by ordering Defendants to have fourteen hundred utensil sets to be clean, sanitary and wrapped at the start of each meal service.

Plaintiff requests injunctive relief against Defendants Summit Food Service, LLC. and Kim Halverson in their official capacities by ordering Defendants to have a tub/container with a pre-wash/soak solution for each side of Dietary building for utensils to be soaked in while waiting until meal service is complete before sending through the dishwasher.

Plaintiff requests injunctive relief against the Defendants Wasko, Fluke, Reyes, and Schieffer in their official capacities by ordering them to ensure there is a civilian representing the warden/DOC during meal service to ensure sanitation standards are kept.

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities for allowing this conduct.

   **5. Laundry**

It is DOC policy that inmates must clean soiled or stained clothing. It is also policy that no laundry will be washed in the housing units even though laundry soap is sold by the commissary vendor.

Defendant Henry created an MDSP policy in 2021 that allows inmate laundry workers to refuse to launder other inmates' clothing if the inmates suspect sheets and/or blankets are inside the mesh laundry bags that are issued to general population inmates. At MDSP, under every laundry supervisor and every warden/associate warden, there have been many issues with inmate laundry workers stealing sweatshirts, sweatshorts, and sweatpants that are inside the laundry bags in the laundry area, and also inmates whom are not laundry workers when the bags are still in the housing units in the laundry carts if the inmates see the items in the laundry bags. And MDSP unit staff members have warned the Plaintiff and other inmates about theft probability, yet MDSP takes a stance that they are not responsible if the property items are lost or stolen. Therefore, Plaintiff and other inmates would place these clothing items inside pillow cases that are allowed to be laundered in mesh bags, inside t-shirts, and inside pants.

However, April 27, 2021, Plaintiff hid one sweatshirt inside a pillow case inside one mesh bag, and his other sweatshirt inside a pair of pants in a different mesh laundry bag, and sent to laundry in the laundry cart.

Upon returning to the housing unit after work, Plaintiff was approached by a laundry orderly who then handed Plaintiff his laundry bags and told Plaintiff that his clothing was not washed because the laundry workers found the sheets in his bag.

Plaintiff then approached officers at the desk with laundry bags in his hands; however, Corporal Cindy Tycz (now retired), Sgt. Tycz, Sco. Croft, and another white shirt officer (either

a Sergeant or a Lieutenant) refused to look in the laundry bags to verify that no sheets were in the bags.

Plaintiff filed an Informal Resolution Request stating the issue, yet Defendant Voigt ignored most of what was written on the request and responded by quoting the memo by Cpl. Henry and stated, "Your Laundry was returned unwashed due to having sheets/blankets inside your laundry bags."

After an Administrative Remedy Request was filed, Defendant Schieffer rejected the grievance. Essentially Defendants Voigt and Schieffer were sanctioning Defendant Henry's decision to place inmates in charge of rejecting laundry without any evidence of wrong doing on Plaintiff's or other inmates' part. And Defendant Fluke is allowing it.

Defendant Voigt also sanctioned officer misconduct when an officer allowed inmates to steal personal property left in the officers care, stating the "doc is not responsible for lost or stolen items".

Denying laundry services is a violation of United States Constitution Amendment Fourteen, and South Dakota Constitution Article VI § 23 through infliction of cruel and unusual punishment, and is a violation of United States Constitution Amendments Five and Fourteen, and South Dakota Constitution Article VI § 2 by denying rights without due process. All Defendants should know that laundry services are rights, not privileges. And while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendments Five and Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary and permanent injunctive relief against Defendants of this claim in their official capacities by ordering the repeal of the policy/practice Defendant Henry established.

Plaintiff request injunctive relief against Defendants of this claim in their official capacities by ordering them to provide Plaintiff with laundry detergent and fabric softener on a monthly basis to launder his personal laundry items in his housing unit, and change MDSP policy to allow inmates to launder their clothing on the housing units.

Plaintiff requests injunctive relief through having Defendants of this claim to provide washers and dryers for inmates to launder our clothing in the former laundry rooms in the housing units.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against each Defendant of this claim in their individual capacities to make them remember that inmates are not to be in positions of authority over other inmates' rights.

### 6. Paper Towels and Garbage Bags

The Center for Disease Control, the National Institute of Allergies and Infectious Diseases, and the South Dakota Department of Health have provided hand-washing guidelines to reduce the risk of contracting a virus through improper hand-washing techniques. A posting of the guidelines from the SD DOH was also posted in the housing unit restrooms at MDSP.

Every health organization, whether federal government, state government, non-profit institutions and medical facilities include in their guidelines that individuals are to use a

disposable paper towel to turn off the faucets in public restrooms or other restrooms where sinks are shared. However, at MDSP, paper towels were removed from the restrooms in the living units - where at minimum seventy inmates share - when former Governor Dennis Daugaard ordered all departments to cut their budget by ten-percent in 2011. At MDSP, the budget cuts meant reducing the number of inmate workers by combining and eliminating jobs, eliminating disposable trash can liners, and removing paper towels from the inmate restrooms in the housing units.

Since the start of the COVID-19 pandemic, Plaintiff has been attempting to have paper towels returned to inmate restrooms, citing the hand-washing guidelines. Defendants Schieffer rejected the grievance filed for the issue, instructing Plaintiff to submit a project application July 27, 2020 when that is not a reason provided by policy to reject grievances.

After arguing with Defendant Schieffer and Plaintiff's unit manager at the time, Defendant Schryvers, Plaintiff submitted a project application as instructed. September 24, 2020, Defendant Fluke rejected the project applications, stating "not being considered at this time", yet ironically the reason to submit project applications is to have issues considered.

Due to the inept handling of the coronavirus pandemic by Defendants Fluke, DOH, CHS, and DOC as a whole, inmates at MDSP died from contracting the virus and almost every inmate contracted the virus. Due to Plaintiff being obese, having tuberculosis, and being a former heavy smoker, he is at a heightened risk to his health and life if he becomes infected.

As media reports have been showing that the Delta variant is more contagious than the original strain, Plaintiff filed a grievance again requested health guidelines be followed and disposable paper towels be provided in the inmate restrooms in the housing units. This grievance was denied by Fluke 9/23/21. Today, the Omicron variant is even more contagious and MDSP

administration has still poorly managed the threat and risk as there have been multiple outbreaks since this matter was initially filed. Defendants' conduct in these matters have caused great stress, worry, anxiety, and emotional trauma from loss of friends and fear of getting the virus.

Once the flu enters the facility, or the coronavirus, its spread is like throwing a match into a tinderbox as President Trump's staff warned the public about with regards to prisons.

Defendant Fluke and Schieffer have demonstrated deliberate indifference to inmates' health and well being, and refuse basic levels of hygiene care. Their actions caused inmates to suffer and some inmates to die. Their actions violated the United States Constitution Amendment Eight, and South Dakota Constitution Article VI § 23 by subjecting Plaintiff to cruel and unusual punishment And while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendments Five and Fourteen and South Dakota Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

### REQUESTED RELIEF:

Plaintiff requests declaratory relief against the Defendants of this claim in their official capacities.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities through ordering them to issue a formal apology to Plaintiff for their actions, inactions, and ignoring risks.

Plaintiff requests preliminary and permanent injunctive relief against the Defendants of this claim in their official capacities by ordering them to immediately install paper towels in the inmate restrooms in the housing units.

Plaintiff requests preliminary and permanent injunctive relief against the Defendants of this claim in their official capacities by ordering them to immediately begin distributing two disposable trash can liners per room each week.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities for their roles in this claim.

Plaintiff requests an award of compensatory damages in the amount of $500.00 against Defendant Fluke in his individual capacity for his role in this claim.

Plaintiff requests an award of compensatory damages in the amount of $500.00 against Defendant Schieffer in her individual capacity for her role in this claim.

Plaintiff requests an award of punitive damages in the amount of $100,000.00 against Defendant Fluke in his individual capacity for his role in this claim with seventy percent to be split amount next of kin for inmates who died from his actions and inactions.

Plaintiff requests an award of punitive damages in the amount of $100,000.00 against defendant Schieffer in her individual capacity for her role in this claim with seventy percent to be split among next of kin for inmates who died from her official and personal actions and inactions.

## C. Inmate Correspondence Policy

### 1. Facially

The DOC Inmate Correspondence Policy is facially unconstitutional:

For banning envelopes that are not white, Easter Seals or similar envelope sealers, tape, return address labels, rejecting mail due to the envelopes having one of the above on it without opening mail. Plaintiff has had mail rejected under theses bans.

For banning unused postage stamps, unused envelopes, commercial greeting cards, blank paper, postcards, and colored paper. Plaintiff has had mail rejected under these bans.

By not considering incoming mail from the Department of Corrections at South Dakota State Penitentiary where Special Assistant Attorney General Catherine Schlimgen sends legal documents from, parole authorities, or law enforcement agencies or officials, as privileged/legal correspondence unless specifically marked as such, and inmates have no control over. Plaintiff has received privileged/legal correspondence from sheriffs' offices from service of process and from Schlimgen already opened outside his presence.

And by not considering outgoing mail addressed to The National Association for the Advancement of Colored People, the Bureau of Indian Affairs, Parole Authorities, the Chief Warden/Head Warden at SDSP, The Center for Constitutional Rights, and the National Commission on Correctional Healthcare as privileged/legal correspondence.

Defendants DOC, Wasko's and Reisch's policy facially violates the United States Constitution Amendment One, and South Dakota Constitution Article VI § 5 by restricting Plaintiff's freedom of speech and his right to receive privileged, legal, and regular communications from outside sources and receive the privileged and legal matters confidentially. The policy facially violates the United States Constitution Amendment Five and Fourteen, and South Dakota Constitution Article VI 2 Due Process clauses by initiating blanket bans on mail without looking at individual characteristics of items to determine any possible threat. And violates United States Constitution Amendment One by restricting privileged correspondence through not properly classifying incoming and outgoing correspondence as privileged. And Defendant Schieffer rejected a grievance on this issue.

Plaintiff notes that December 10, 2021, Defendant Clark and Fluke made a change via a memo which has not been officially changed through revised policy, where incoming personal mail is photocopied and the photocopies are delivered. This has also happened with legal mail. This is not a DOC wide change.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by striking overreaching bans on incoming mail as listed above.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by ordering Defendants to consider all incoming mail from sources listed above as privileged/legal correspondence.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacity by ordering a revision to policy to allow for correspondence coming in unapproved envelopes to be sent to inmates with a photocopy of the envelope attached to or wrapped around the contents to allow the speech to be received, or by replacing the envelope and placing photocopy and original contents inside.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendants Fluke and Schieffer in their individual capacities for their roles in the unconstitutional violations.

### 2. Inmate Correspondence Policy as Applied

The DOC Inmate Correspondence Policy is unconstitutional as applied:

By Defendant Fluke having mailroom staff at MDSP consider incoming correspondence on what he calls "cardstock" rejected outright. Including business card from Bethel University and correspondence from Southeast Technical College. There is no written policy available that bans cardstock or business cards. Defendant Fluke also sanctioned Defendant Warembourg rejecting a folder from Bethel University without folders being mentioned on any policy. Folders are available to purchase from commissary, are handed out in vocational classes, are handed out in academic classes, are handed out by treatment providers, are handed out to inmates in religious classes, are handed out to inmates in religious and practices, are handed out to inmates in religious choir practice and are handed out to inmates that are religious/cultural board members. Business cards have been handed out by state legislature members visiting, religious leaders, re-entry group leaders, treatment providers, and have been allowed through the mail prior to Defendants Fluke and Warembourg. There are not other avenues inmates have available to receive the information contained on or within the folders and business cards rejected on other folders or business cards that are distributed.

By Mailroom staff rejecting envelopes that are not pure white. Rejecting envelopes that are "off white", "egg-shell white" and envelopes with security features on inside portion.

By incoming correspondence that has a piece of tape on the flap of a self-addressed stamped envelope being rejected for having scotch tape on the flap.

Defendants conduct as outlined above in this claim violate United States Constitutional Amendment One and South Dakota Constitution Article VI §§ 4 an d5 with regards to freedom of speech and freedom to receive correspondence, and while not challenging his conviction, sentence, or his plea agreement in this action, Plaintiff notes that Defendants' conduct also violate United States Constitutional Amendments Five and Fourteen and South Dakota

Constitution Article VI § 2 through violating Due Process of the Law by subjecting Plaintiff to conditions that were not part of plea negotiations and accepted deal.

**REQUESTED RELIEF:**

Plaintiff requests declarative relief.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacity through a judicial order commanding them to cease the practices as outlined above in this claim.

Plaintiff requests an award of nominal damages in the amount of $100.00 from each Defendant of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from Defendant Fluke in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $35,000.00 from Defendant Schieffer in her individual capacity.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 from Defendant Warembourg in her individual capacity.

## D. Abuse of Discretion/Access to Courts claims

### 1. Administrative Remedy Process

In these claims, the handling of matters by the Defendants caused injury to Plaintiff through disciplinary reports staying on record which affects his release, caused Plaintiff to not receive or keep property purchased, allowed defects of medical care and threat to health through lack of proper sanitation measures to continue, and allowed other inmates and staff members to know person, private and confidential medical information regarding Plaintiff, which has also subjected him to harassment on the part of same.

### a) Delivery of Responses

The Administrative Remedy Process is the SD DOC's grievance process. Per the Prison Litigation Reform Act and SDCL § 21-62-2, inmates are required to use available grievances to address complaints prior to pursuing civil actions.

As such, Plaintiff has requested on multiple occasions both formally and informally at MDSP and SDSP for the Administrative Remedy Process to be treated like Legal Mail, particularly with the delivery of responses.

The current practice is that those issuing responses to the grievances send them back to inmates through the mail system. This mail system allows the grievances to come into the hands of many officers to where they are able to read the complaints and affect the returns to inmates. Officers have read Plaintiff's confidential medical issues regarding his pleas for help, including those in this complaint. Officers have read his grievances against them and other officers. Plaintiff has had delayed responses delivered to him, thereby reducing the amount of time he had to file the next step, and had his second step rejected by Melissa Maturan for not filing on time.

Part of the process at SDSP consists of officers placing the responses between the bars on an inmate's cell front overnight when inmates are asleep, where if other inmates walk by (i.e. for kitchen work, leaving on the shuttle, or breakfast) they are able to take the grievance responses. Plaintiff has had responses either not delivered at all or taken by inmates. Cellmates are also able to. Plaintiff has received grievance responses up to five days after the date of the response, but the date on the response itself is the date that prison administration use when determining if Plaintiff and other inmates filed their next step in time.

Plaintiff has been harassed by other inmates for filing grievances, which they learned from seeing in the cell bars at SDSP and on the officers' desks at MDSP, and some unethical officers have read the complaints and shared with their inmate friends.

The handling of responses have prevented Plaintiff from appealing major discipline reports which could be a factor when seeing the parole board.

The handling of a grievance is part of our Access to Courts, thereby affecting our United States Constitution Amendments One, Five, and Fourteen. Defendants DOC, Young, Fluke, Maturan, and Schieffer have violated Plaintiff's United States Constitution Amendment One and South Dakota Constitution Article VI § 5 right of freedom of speech to privately communicate with and receive communications from Administrative Staff through not treating the Administrative Remedy Process as Legal Mail. Defendants DOC, Young, Fluke, Maturan and Schieffer have violated Plaintiff's United States Constitution Amendment Four and South Dakota Constitution Article VI § 11 right to privacy and confidentiality in his communications of medical information. Defendants DOC, Fluke, Maturan, Young, and Schieffer have violated Plaintiff's United States Constitution Amendments One, Five, and Fourteen, and South Dakota Constitution Article VI §§ 2 and 4 for Due Process and right to Petition through not treating grievances as legal mail. Allowing other inmates and staff to read sensitive matters in his grievances subjects him to retaliation, extortion, and threats of violence, violating United States Constitution Amendment Eight and South Dakota Constitution Article VI § 23 through subjecting him to cruel and unusual punishment.

**REQUESTED RELIEF:**

Plaintiff requests declarative relief.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities by an order to change policy and procedure of returning Informal Resolution Request Responses and Administrative Remedy Responses by having the returns being given to Plaintiff and other inmates in the same way as Privileged/Legal Mail is, by Unit Staff dating the day being returned to Plaintiff and other inmates, and handing responses directly to Plaintiff and other inmates personally themselves and not through correctional officers.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities by an order to change policy and procedure of using the date the responses were delivered into the hands of the Plaintiff and other inmates as the beginning of the days the Plaintiff and other inmates have to file the next step.

Plaintiff requests an award of nominal damages in the amount of $100.00 from the Defendants of this claim in their individual capacities.

### b) Receipt of Requests

Unit Staff at MDSP, including Defendant Voigt, have made it a common practice not to receipt requests for remedies they receive from Plaintiff and other inmates the same date they receive them. This practice violates the Defendants' own rules and policy. In less than two years at MDSP, seven of the grievances submitted by Plaintiff were not receipted at all, one of those and nine others exceeded the time limits set for staff to respond as they manipulate the received date to their advantage. In another one, Defendant Voigt falsely marked the date received as fifteen days later and her response was twenty-three days after it was submitted to staff and she received it which exceeded time limit set by policy. In at least three, staff dated but did not sign.

This is not isolated to MDSP. It appears to be system wide within the DOC, as one was not receipted, response was dated four days after submission and not delivered to Plaintiff until

sixteen days later thus were eliminating Plaintiff's ability to appeal. One took thirty-three days to respond instead of ten, two took over sixty days including one submitted in early January but not responded to until five months later.

While Defendants unethically cheat the system by misdating their receipts as Defendants Voigt and Schieffer do, Defendants Young, Fluke, and Schieffer consistently respond over the designated amount of time while Schieffer and Maturan strictly apply timelines to submissions by Plaintiff and other inmates. With Maturan taking away a day at SDSP by deliberately miscalculating the days by attempting and effectively rewording policy while Defendants Young and Dreiske allowed it. If Plaintiff and other inmates are late, they automatically lose.

Defendant Schieffer and Defendants Fluke would have seen the errors of not receipting and not signing the grievances submitted to them by their subordinates, and thus allowed it. Defendant Young, Dreiske and Maturan would have seen the errors of not receipting and not signing the grievances submitted to them by their subordinates, and not following timelines, and thus allowing it to happen and continue. As a result of inadequate training, Plaintiff has suffered injury because the Defendants negligently performed their duties and intentional tortuous acts were committed. And as such, Plaintiff was not able to bring claims and challenges to unconstitutional conduct.

Defendants DOC, Fluke, Young, Schieffer, Dreiske, and Maturan unequally apply strict timelines to Plaintiff's and other inmates' grievances that they do not apply to staff. This affects and violates our United States Constitution Amendment One and South Dakota Constitution Article VI § 4 right to petition courts for redress of grievances, as well a United States Constitution Amendment Four and South Dakota Constitution Article § 18 through unequal treatment. And as the Administrative Remedy Process is a required element and procedure in

challenging disciplinary reports, the Defendants conduct, actions, and inactions violate United States Constitution Amendments Five and Fourteen and South Dakota Constitution Article VI § 2 through denying Procedural Due Process.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief through a statement and acknowledgement from the Court that the South Dakota Department of Corrections lacks an available grievance process as anticipated and procedurally required under the Prison Litigation Reform Act and South Dakota Codified Laws prior to filing claims.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities through an order to change policy and thus allow for equal treatment, where if prison officials do not respond within allotted time period, default judgment would be granted against them as happens when inmates fail to follow timelines.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities through an order to use the date Plaintiff and other inmates submit their requests for resolution as the beginning of the time staff have to deliver their responses.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities through an order with regards to Administrative Remedy Requests and Appeals to the Secretary of Corrections, as the official dates requests were received by staff.

Plaintiff requests injunctive relief against Defendants in their official capacities through an order granting all of Plaintiff's non-monetary requests for relief from October 19, 2018 to present where Defendants defaulted and Plaintiff was denied his requested relief. To include:

| Administrative Remedy No. | Requested Relief | Reason for Default |
|---|---|---|
| 36432 | immediate appointment with a specialist for right arm and shoulder | AR response over 30 days |

| 36706 | provide folder and business card from Bethel University | IR response over 10 days |
|---|---|---|
| 36147 | provide laundry detergent and fabric softener at state expense | AR response over 30 days |
| 36367 | relieve Sco. Jessen and Sco. Pinkelman of duty until thoroughly trained in allowable property | AR response over 30 days |
| 36273 | remove Voigt from a position to affect meaningful access to the grievance process | AR response over 30 days |
| 34384 | remove Voigt from a position to affect meaningful access to the grievance process for not knowing staff are responsible for property in their care | AR response over 30 days |
| 36391 | grant a discretionary hearing in front of the full board | AR response over 30 days |
| 32663 | extend limits of the place of confinement pursuant to SDCL § 24-2-25 to a home/residence in the Sioux Falls, SD area with conditions reasonably related to terms of suspension set by Honorable Gene Paul Kean | AR response over 30 days |

Plaintiff requests injunctive relief against the Defendants of this claim in their individual capacities through an order granting all monetary requests for relief from October 19, 2018 to present where Defendants defaulted and Plaintiff was denied requested relief. To include:

| Administrative Remedy No. | Requested Relief | Reason for Default |
|---|---|---|
| 26022 | $200.00 from pain from no medication after surgery | AR response over 30 days |
| 36269 | Refund $2.00 sick call for re-order of head of bed wedge | AR response over 30 days |

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant Fluke for his allowing this conduct.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant Schieffer in her individual capacity as she allowed this to happen by her subordinates

and she did it herself.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against Defendant Voigt in her individual capacity in this matter as she consistently refused to receipt the Administrative Remedies when submitted to her, even when was written on one instructing her to per policy, for her intentionally manipulating the date on informal submitted to her, and her not following timelines herself.

### c) Rejecting

Defendant Maturan and Schieffer have been abusing their discretion and abusing the process as Administrative Remedy Coordinators by improperly rejecting grievances with false claims, improper counting of days, and for reasons not authorized by policy.

Maturan by effectively changing the working of policy to reduce the amount of time inmates have to respond and file the next step when not in her authority.

Maturan also rejected a grievance Plaintiff filed on her, which by policy, she should not have been handling.

Schieffer by falsely claiming multiple grievances have been filed on same issue, falsely claiming more than one issue was being addressed, and telling Plaintiff to submit a project application when that is not a reason authorized by the Secretary of Corrections through policy.

Schieffer further frustrates the process by waiting to reject grievances far enough after the grievance had bee submitted to prevent Plaintiff and other inmates to re-file the grievances correcting her alleged wrong. The conduct of these Defendants has caused the Plaintiff injury because the DOC negligently performed its duties through not providing adequate training.

Over the course of twenty years, Plaintiff has filed hundreds of grievances in the exact same manner and Maturan was the first to change how days were counted by exact same policy, and

Schieffer has been the only Administrative Remedy Coordinator to deliberately frustrate Plaintiff and other inmates to seek redress of grievances and has essentially made the administrative remedy process unavailable because it is a dead end with Maturan, Fluke, Voigt and Schieffer being unable or consistently unwilling to provide any relief, the process by Schieffer has made it incapable of use, and Maturan, Fluke, Schieffer, and Voigt thwart the Plaintiff and other inmates through machination and misrepresentation.

With Defendant Fluke being responsible by ignoring Plaintiff's numerous requests to fix the system and Defendants DOC by the Secretaries also deflecting the issue to prison staff.

The system in effect is not a meaningful access as the Unit Coordinators are either trained and instructed by Defendants DOC, Reisch, Fluke, and Young to deny and refuse any responsibility, or they choose on their own to deny and refuse any responsibility from any DOC official. All Defendants of this claim have committed intentional tortuous acts.

Defendants efforts and actions violate United States Constitution Amendment One and South Dakota Constitution Article VI §§ 4 and 5 rights to petition for redress of grievances, and United States Constitution Amendments Five and Fourteen and South Dakota Constitution Article VI § 2 through the denial of procedural and substantive due process.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief against Defendants of this claim in their official capacities by this Court declaring that due to the frustrations caused by Defendants Fluke, Young, Dreiske, Maturan and Schieffer (while Schieffer and Maturan have been Administrative Remedy Coordinators), the grievances for claims are considered to be exhausted for any matter occurring from October 19, 2018 until six months past the ruling on this claim for purposes of bringing actions for relief.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities through requiring Defendants to remove Maturan, Schieffer and Voigt from any position to affect the handling of the Administrative Remedy Process.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from Defendant Schieffer in her individual capacity.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from Defendant Fluke in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from Defendant Leidholt in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 from Defendant Denny Kaemingk in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendant Voigt in her individual capacity.

### d) Not investigating

The Administrative Remedy Process is unconstitutional as applied at MDSP.

Defendants Fluke, Schieffer and Voigt have made it a common practice to not investigate the grievances submitted by Plaintiff and other inmates through essentially just quoting the complaint or the complained of rule or policy and denying relief. As was done when Plaintiff's clothing was returned unclean due to inmates being given authority over other inmates. This action further frustrates the grievance process making it an unavailable remedy.

Defendants conduct thereby violate and frustrate Plaintiff's Access to the Courts and right to

petition for redress of grievances guaranteed by United States Constitution Amendment One and South Dakota Constitution Article VI §§ 4 and 5, and violate his right to substantive and procedural due process guaranteed by United States Constitution Amendments Five and Fourteen, and South Dakota Constitution Article VI § 2.

**RELIEF REQUESTED:**

Plaintiff requests declaratory relief.

Plaintiff requests injunctive relief against Defendants Wasko, Fluke, Schieffer and Voigt in their official capacities by and through an order of the Court for meaningful changes to be made in the handling of Administrative Remedies at MDSP through properly and diligently investigating claims.

### e) Subjects of Grievances

In violation of policy, Defendants have even allowed the subjects of the grievances provide the responses to the grievances. As Defendant Young did, when allowing Summit Commissary to provide responses that young signed. And by Defendant Fluke by allowing Defendant Summit Food Service, LLC. to provide responses to grievances filed on their running out of food and serving food with lower nutritional value than that ordered by the dieticians, which affected Plaintiff's and other inmates' rights to be free from Cruel and Unusual Punishment. As stated in subsection C, Maturan rejected a grievance against her.

In the digital age now, Defendants have other individuals type the responses, including the subjects of the response, and that becomes the official response as the Defendants will copy and paste it into the response, print and sign.

This frustrates realistic attempts by Plaintiff and other inmates to seek redress for grievances, frustrates Plaintiff's due process in regards to appealing write-ups and sanctions, negligently

allows for deprivation of nutrition to go long periods unchecked without true ability to correct the harms Plaintiff and other inmates are subjected to from such (as when Schieffer and Fluke allowed Summit Food Service, LLC to respond to complaint about substitution one ounce of peanut butter with half ounce of jelly for six ounces of Italian meat sauce and eight ounces of rotini noodles), and thereby violates United States Constitution Amendments One, Five, Eight, and Fourteen, as well as South Dakota Constitution Article VI §§ 2, 4, 5, and 23.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants Wasko, Fluke, Sullivan, Maturan, Schieffer, and Voigt by and through a court order mandating the policy be changed as written and as applied to prevent subjects of complaints from providing responses.

### 2. Legal Typing

#### a) Charges

Over the past twelve years since the DOC first provided computers for inmates to use for legal typing, the Plaintiff has utilized the computers for prior 42 USC § 1983 action at MDSP, small claims actions at SDSP in 2014 and MDSP in 2015, habeas corpus action at MDSP prior to release in August 2016, habeas corpus action and contesting suspended sentence revocation and imposition from June 2017 to December 2019 at SDSP, and from December 2019 to present at MDSP.

Prior to December 2019 at MDSP, Plaintiff had never been charged for printing documents prepared on the computers.

Defendants DOC's policy 1.3.E.1 entitled Inmate Access to Courts provides that part of that access is through designated computers to type legal documents.

However, Defendants Fluke and Schieffer have devised a system to frustrate Plaintiff's and

other inmates' attempts to seek redress for relief through the courts by charging initially twenty-five cents per page printed, then five cents per page printed when Defendant Young reduced the fees for photocopies in November of 2018.

Nowhere in any DOC policy does it provide for charging for anything other than photocopies, copies of bank statements and medical records.

Defendants Fluke and Schieffer are violating Plaintiff's and other inmates' United States Constitution Amendment Fourteen and South Dakota Constitution Article VI § 18 rights by applying the exact same state-wide policy in a different manner at MDSP than it is applied at SDSP (and formerly at MDSP) through charging for computer printing, even when not designated in the Inmate Access to Courts policy that there will be a charge for anything other than photocopies.

Plaintiff has grieved the issue with Unit Coordinator Kris VenOsdel stating, "The charge of .05 cents is for any copy requested by an inmate that is produced within the institution, not just photocopies. The memo stating this will be followed at all DOC agencies." Yet that is not the wording of DOC policy or the memo from Defendant Young, nor was it the practice at SDSP or still is as reported from inmates that have been returning to MDSP from SDSP.

Due to charges, when Plaintiff wasn't receiving meaningful financial assistance from the community, he was forced to choose between using the computers and being charged what he could not afford, or not file claims. As a result, some claims have been forfeited.

Plaintiff had also written to former Secretary Leidholt about this and Defendant Reisch with deflection from them by stating use the grievance process and contact Administrative Remedy Coordinator. Both Defendants Leidholt and Reisch negligently performed their duties through not providing adequate training to Mike Durfee State Prison staff to ensure they apply the policy

as applied at SDSP and as applied prior to the intentional tortuous acts of mass retaliation against all inmates due to a civil matter by another inmate that caused charge to be reduced from 25 cents per page copied to 5 cents per page copied.

And it is noteworthy to mention that prior to the DOC eliminating the contract attorney and his legal assistant (Delwin "Sonny" Walter and Mark Bidne respectfully) to provide an Inmate Legal Assistance Office, copies of initial filings were free.

Defendant Fluke and Schieffer's actions appear to be designed to frustrate Plaintiff and other inmates from pursuing legitimate legal action with base wage for all jobs being twenty-five cents per hour, with Plaintiff currently being at forty cents per hour. With their conduct being designed to inhibit and impede Plaintiff's right to petition the courts, violating United States Constitution Amendment One and South Dakota Constitution Articles §§ 4 and 5 as well as due process guaranteed by United States Constitution Amendments Five and Fourteen and South Dakota Constitution Article VI § 2, and their conduct violating United States Constitution Amendment Fourteen and South Dakota Constitution Article VI § 18 by not providing equal treatment to all who fall under same policy and memo.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants Fluke and Schieffer in their official capacities by ordering them to follow themselves and have their subordinates follow policy as written at time of initial filing of this matter, applying proper definition of photocopy for charges.

Plaintiff requests injunctive relief against Defendant Wasko in her official capacity by ordering her to precisely clarify in statewide DOC policy that former Chief Warden and Director of Operations Douglas Weber's, former Chief Warden and Director of Operations Robert

Dooley's, and former Chief Warden and Director of Operations Defendant Young's policies of not charging for computer printing is what the policy means.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of the total charges for legal typing from December 2019 until date DOC policy is changed to reflect state-wide practice or date of ruling, if ascertainable, or total legal copy fees if not able to distinguish, from Defendants Leidholt, Reisch, Clark, Wasko, Fluke, and Schieffer in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendant Reisch in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendant Clark in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendant Leidholt in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendant Wasko in her individual capacity.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Fluke in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 from Defendant Schieffer in her individual capacity.

**b) Unexcused Absences**

Defendant Schieffer has created a policy at MDSP where staff are to consider Plaintiff and other inmates doing legal typing as allowed in DOC's Inmate Access to Courts policy as unexcused absences from work, vocational programming, and academic programming.

While Voigt, Schieffer, and Fluke are correct that documents can be handwritten, DOC policy provides that the use of designated computers is part of the Access to Courts that the State of South Dakota provides Plaintiff and other inmates, handwritten documents would have increased costs filing and serving due to taking up more space and therefore involving greater costs for photocopies, and the handwritten documents would be more difficult for the courts and opposing parties to read and understand. This being complicated more due to Plaintiff having a history of tendonitis in his dominant hand, which comes back during lengthy and frequent periods of writing.

Furthermore, for staffing purposes and other purposes involving the running of the prison, Defendants Fluke and/or Schieffer scheduled legal typing access to be opposite times inmates would be scheduled for work or programs.

In large parte because of this policy, to avoid being terminated from the job Plaintiff had and not being terminated from programming for earned discharge credits, Plaintiff's complaint is being filed over a year after he originally intended to file it and therefore lost the ability to pursue redress of some claims. Also because of this policy, he did not have the unpunishable time and ability to appeal habeas corpus action or file a federal one.

Plaintiff sought reasonable accommodation from Defendants by allowing him to purchase or be provided with a laptop computer with Open Office/Microsoft Word pre-loaded on it, without CD drives, DVD drives, or floppy disk drives and internal (if personal) or external (if state owned) solid state hard drives so that there would be no motors or wireless capabilities and saved

documents could be taken to Unit Staff or the Legal Typing area to hook-up to printer to print the legal documents; and where Plaintiff has access to LEXIS NEXUS.

This would reduce the amount of documents and papers in cells meaning lower fire risk and easier for security to conduct shakedowns of rooms; would allow Plaintiff and other inmates to do legal typing without disrupting work and programming schedules; would allow Plaintiff and other inmates to have time to proofread and edit documents for errors that do not have time to do currently; and as Plaintiff is requesting this accommodation at MDSP which is a low-medium security facility and inmates that work in the Print Shop, Braille Shop and Sign Shop at SDSP which is a high-medium security facility are allowed to take laptop computers to their cells to work on, there is a negligible security impact.

Defendant Fluke rejected the Project Application claiming security issues.

Defendant Vogt denied first stage of grievance stating "courts accept handwritten documents".

And Barracks Unit Coordinator and designee for Administrative Remedy VenOsdel rejected second stage of grievance.

Plaintiff attempted another reasonable accommodation through requested inmates conducting legal typing to be allowed to purchase a flash drive that would be handled only by staff at the legal typing room by plugging into a USB extension in her office when an inmate is ready to load/save and kept in a locked drawer in her office as with pictures/books for the Viewing Room she supervises (same as typing room), however, Fluke denied.

Defendant Fluke makes determination as to what property inmates at MDSP are allowed to have, while DOC policy does specify inmates cannot own typewriters with memory, word-processors or computers, therefore, DOC and Wasko could allow owning, or Fluke can allow use

of laptops without owning. And typewriters are no longer available to purchase (and cost a significant amount of money when was available). There was no indication of how having something with memory (ability to save documents) is a security threat. Just a label given by Defendant Fluke.

Defendants Fluke and Schieffer violate United States Constitution Amendment One and South Dakota Constitution Article VI §§ 4 and 5 rights of access to courts and to petition for redress of grievances, and United States Constitution Amendment Five and Fourteen and South Dakota Constitution Article VI § 2 Due Process by classifying legal typing as unexcused absences from work and programming and Fluke by refusing reasonable accommodations.

**REQUESTED RELIEF:**

Plaintiff requests declarative relief.

Plaintiff requests injunctive relief against Defendants Fluke, Schieffer and Voigt in their official capacities by ordering them to cease classifying Plaintiffs and other inmates exercising their rights as unexcused absences.

Plaintiff requests injunctive relief against Defendants Fluke, Schieffer, and Voigt in their official capacities through formal apology letters for conspiring to impede his access to the courts.

Plaintiff requests preliminary injunctive relief against Defendants Fluke, DOC, and Wasko in their official capacities through ordering them to provide Plaintiff with a laptop computer either state owned with an external solid-state hard drive for Plaintiff to own or use as described above or a laptop computer with internal solid-state hard drive for Plaintiff to own as described above, where either way could have administrative lockouts placed on the laptop as is done with every other computer used by inmates at MDSP and SDSP, billing Plaintiff for cost at ten percent of

every deposit until paid in full, where Plaintiff would allow inspections of saved matter by Bureau of Information Technology or ethical DOC staff, and with LEXIS NEXUS for research of case law and statutes.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 each against Defendant Fluke and Schieffer in their individual capacities for classifying Legal Typing as unexcused absences or allowing subordinates to.

### 3. Copies when account balance is zero.

To further frustrate Plaintiff's attempts to seek redress, Defendants DOC, Fluke and Voigt refused to allow Plaintiff to make photocopies of necessary documents for filing and serving when Plaintiff's account balance was zero due to policy only authorizing to overdraw account up to two dollars for photocopies for qualified legal claims even though Plaintiff is gainfully employed and has had average deposits in excess of $140.00 for previous six months. Yet there is no limit as to how far in debt an inmate can go for hygiene items, stationary, postage, medical, fines, etc. With many inmates being in debt for well over $1,000.00.

Defendants actions are designed to prevent necessary filings and servings to be made, and the action and application of the policy to Plaintiff in this matter violate United States Constitution Amendment One and South Dakota Constitution Article VI §§ 4 and 5 with regards to access to courts and right to petition for grievances.

### REQUESTED RELIEF:

Plaintiff requests declaratory relief against Defendants in this claim.

Plaintiff requests preliminary and permanent injunctive relief against Defendants in this claim in their official capacities by and through a court order for them to cease and desist with this practice when they have knowledge that Plaintiff and other inmates have pending claims in court and/or time sensitive filings.

### 4. Legal Access to Case Law and statutes

In 2017, Defendant DOC terminated its contract with a private attorney to assist inmates with their legal access to the courts and helping research matters. The DOC instead contracted with GTL to provide LEXIS NEXUS on the GTL Inspire tablet computers issued to inmates to research on our own without training.

However, the network is frequently down, and there are exceptionally slow processing and spooling speeds, making it difficult to actually conduct research, and the DOC did not contract for access to case law from other states' Supreme Courts or Superior Courts and from Circuit Courts in South Dakota the Defense counsels and courts themselves cite but Plaintiff cannot research.

The LEXIS NEXUS system available to inmates on the tablets has many flaws, errors and bugs in it which further impede research. Including having search results being displayed to where the sentences/paragraphs are shown as a long line on right side of screen with one to two letters per line, which it makes extremely difficult to read and ascertain anything from the results.

Furthermore, the LEXIS NEXUS accessibility is not available in the Legal Typing rooms, making it more difficult and time consuming to accurately quote case law, statutes, and conduct research. These issues caused injury to Plaintiff as it impeded and frustrated his ability ot file appeal to state courts denial of habeas relief and to file a federal petition.

These issues impede and frustrate Plaintiff's Access to the Courts and his United States Constitution Amendment One and South Dakota Constitution Article VI §§ 4 and 5, and hinders and interferes with Plaintiff's due process rights guaranteed him by and through United States Constitution Amendments Five and Fourteen, and South Dakota Constitution Article VI § 2.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants DOC and GTL in their official capacities by ordering them to fix the accessibility and connectivity issues that have plagued the system since inception and has gotten worse since.

Plaintiff requests injunctive relief against Defendants DOC in their official capacities by ordering them to expand the content availability from LEXIS NEXUS to include other states Supreme Courts and Superior Courts decisions as well as South Dakota Circuit Court decisions and Civil & Habeas Pleadings filed in State and Federal Courts.

Plaintiff requests injunctive relief against Defendants DOC in their official capacities by ordering them to expand the content availability from LEXIS NEXUS to include access to pleadings and motions filed in South Dakota Circuit Courts and in Federal Courts so Plaintiff and other inmates have a better understanding and example of how to draft and submit claims for relief.

Plaintiff requests injunctive relief against Defendants DOC in their official capacities by ordering them to make the LEXIS NEXUS available in the Legal Typing rooms through GTL Kiosks at each typing station (or available on computers inmates use for preparing legal documents) to allow Plaintiff and other inmates to properly research and quote material in filings.

5. **Account Statements for PLRA requirements**

Defendant Fluke stated that the cost of all photocopies is five cents per page and that is what is stated in the memo from Defendant Young. However, the DOC provides in the Inmate Accounts and Financial Responsibility policy that the charge for copies of account statements for PLRA is fifty cents per statement, thus $3.00 for twelve sheets of paper in Plaintiff's case instead of sixty cents total. Due to delay in filing this matter, Plaintiff had to spend another $1.00 for two more months.

This policy can have only one goal, to further discourage Plaintiff and other inmates from pursuing actions in court as the $3.00 is the same amount as twelve hours of work at the base wage of twenty-five cents per hour. If in the community, the equivalent would be $120.00 for twelve sheets of paper if wage was $10.00 per hour.

These statements for PLRA used to be free of charge as they are needed to file for in forma pauperis status and for waiver of filing fees. And Plaintiff has no other avenue for the statements as the DOC made a decision about a year ago to quit providing statements on a monthly basis due to accounts being on inmates GTL Inspire tablets.

This policy thereby violates Plaintiff's rights to Access to Courts and right to Petition guaranteed by Untied States Constitution Amendments One, Five and Fourteen, as well as South Dakota Constitution Article VI §§ 2, 4, and 5/

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary and permanent injunctive relief against Defendant Wasko in her official capacity by order for DOC facilities to cease charging more for copies of statements than costs for legal copies.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants Leidholt, Reisch, Clark, and Wasko in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $3.20 against Defendants Leidholt, Clark, and Reisch in their individual capacities to reimburse for charges over five cents per page.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendants Leidholt, Reisch, and Clark in their individual capacities for this policy and practice.

### E. Nutrition Claims

On many occasions, including but not limited to October 19, 2020, October 4, 2021, October 5, 2021, October 6, 2021, and October 8, 2021, Defendants Summit Food Services, LLC, Jarrod "X", and Kim Halverson ran out of food being served and substituted with food in quantity and in nutrition of lesser value.

October 19, 2020, Summit ran out of the six ounces of Italian meat sauce and eight ounces of rotini noodles (their version of spaghetti) and substituted with one ounce of peanut butter and one-half ounce of jelly.

October 4, 2021, Summit ran out of eight ounces of fluffy rice and substituted with a small piece of cornbread.

October 5, 2021, Summit ran out of three-point-two ounces of sloppy joe meat sauce and substituted with a small baked potato.

October 6, 2021, Summit ran out of eight ounces of rotini noodles and substituted with six ounces of macaroni noodles.

October 8, 2021, Summit ran out of eight ounces of home fried potatoes and substituted with four ounces of bland potatoes for Plaintiff and some other inmates, while outers received eight ounces of bland potatoes.

When these many occasions are brought to the attention of security officers supervising the meal service, they laugh it off and do nothing because that is not their responsibility or will simply deflect to Summit.

When grieved, Defendant Fluke stated (in specific reference to the October 19, 2020 incident) that "Your complaint has been reviewed and the Food Services manager consulted. The Dietician has approved substitutions based on nutritional value. Summit reports the substitution that was made did meet those requirements."

No reasonable and rational person could have believed that one ounce of peanut butter and one-half ounce of jelly was the same or greater nutritional value as six ounces of Italian meat sauce and eight ounces of rotini noodles (spaghetti).

More recently, Summit Food Service ran out of eight ounces of home fried potatoes and substituted with a small bag of classic potato chips which at most would have been .75 ounces (the bag the size of a bag that would be put in a child's lunchbox), alleging that it was of equal nutritional value.

The mindset of MDSP is systemic in denying any non-inmate could do any wrong to inmates. Plaintiff and other inmates have a right to receive food of adequate nutritional value and Defendants Fluke and the DOC are the ones ultimately charged to ensure that we get it as they are our custodians by state statute and judicial decrees.

Defendant Fluke's and DOC's attitudes on this matter show deliberate indifference to Plaintiff's and other inmates' nutritional needs, lives, health and well-being, thereby subjecting

Plaintiff and other inmates to cruel and unusual punishment in violation of United States Constitution Amendment Eight and South Dakota Constitution Article VI § 23. And Plaintiff notes that while not challenging in this action his plea agreement, conviction, sentence, Defendants conduct and attitude in this matter further violates due process rights of Plaintiff as guaranteed by United States Constitution Amendment Five and Fourteen and South Dakota Constitution § 2 as the conditions were not stipulated by the state or the court as part of Plaintiff's plea agreement as lack of proper nutrition is causing permanent damage.

As a whole, the menu prior to any reduction of food fails to provide recommended daily allowances of any vitamins, nutrients, or minerals, further subjecting Plaintiff and other inmates to permanent harm and compromising our immune systems to the point where they allow pandemics like the Coronavirus and influenza to spread like wildfire. The diets that are served by Defendant Summit Food Service, LLC under the contract and authority of Defendants DOC, Leidholt, Reisch, Clark, Wasko, and Fluke cause deterioration and degeneration of bones and joints, as is the case with Plaintiff. Upon comparing menus from the past, the DOC Defendants have allowed servings of proteins, fruits, and vegetables to be eliminated during entire days.

The diets that are served by Defendant Summit Food Service, LLC and Kim Halverson under the contract and authority of Defendants DOC, Leidholt, Reisch, Clark, Wasko, and Fluke allow illnesses to affect Plaintiff and other inmates quicker, longer, and to be more harmful.

Plaintiff has requested numerous times to be provided with Boost (or equivalent drink that provides extra protein, vitamins and minerals) or Centrum Silver to correct deficiencies, but Correctional Health Services staff and MDSP administrative staff refuse and direct to purchase multivitamins from commissary, however, the commissary multivitamins do not provide nearly as much vitamins and minerals as Boost or Centrum Silver, and does not provide protein at all.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief.

Plaintiff requests preliminary injunctive relief against Defendants DOC, Leidholt, Reisch, Clark, Wasko, Fluke, Summit Food Service, LLC and Kim Halverson in their official capacities through ordering Defendants to provide Plaintiff with Boost, Ensure, Glucerne, Health Shakes, or Carnation Instant Breakfast at their expense until menu's are changed to provide proper nutritional levels.

Plaintiff requests injunctive relief against Defendants DOC, Fluke, Wasko, Summit Food Service, LLC, and Halverson in their official capacities through ordering Defendants to make the nutritional values of all meals available to inmates through our GTL Inspire tablets.

Plaintiff requests injunctive relief against Defendants DOC, Fluke, Wasko, Summit Food Service, LLC, and Halverson in their official capacities through ordering Defendants to ensure that Plaintiff receives one-hundred percent of the recommended daily values of all vitamins, minerals, other nutrients, and protein for his age and weight as guided by the United States Department of Agriculture.

Plaintiff requests an award of nominal damages in the amount of $100.00 against Defendants DOC, Reisch, Fluke, Leidholt, Clark, Wasko, Summit Food Service, LLC, Jarrod "X" and Halverson in their individual capacities for failure to require and provide daily nutrition and adequate substitutes to Plaintiff during his incarceration.

Plaintiff requests an award of compensatory damages in the amount of $50,000.00 against Defendants DOC, Reisch, Fluke, Leidholt, Clark, Wasko, Summit Food Service, LLC, Jarrod "X" and Halverson in their individual capacities for failure to require and provide daily recommended allowances of vitamins, minerals, protein, and other nutrition.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against each Defendant in this claim in their individual capacities for failing to provide daily recommended allowances of vitamins, minerals, protein, and other nutrition on a daily basis and not providing equivalent and adequate substitutions.

## F. Lack of Adequate Training and Harassment

Due to indifference from Defendants Fluke and Voigt, as well as inadequate staffing levels, lack of proper standards, or indifference by the training officer as well, staff at MDSP lack adequate training.

Officers like Senior Correctional Officers Jessen and Pinkelman have conducted shakedowns of inmates' cells and confiscate items that are allowed for inmates to have by policy, including items that come in from the mail, because they lack adequate training as to what is allowed and what is not.

Frequently, when officers confiscate items, they will simply dispose of the items in the trash and without any logging as taking the items, eliminating any possibility of due process and recovery of the items through internal systems or through South Dakota and United States Courts through civil actions due to a deliberate tactic of not recording items taken. Officers have also used tokens they take from inmates off of their persons or out of their cells to purchase soft-drinks, and consume Little Debbie items and potato chips that they confiscate from inmates without records.

When Plaintiff filed a complaint about recent property being taken by Sco. Jessen, Defendants Voigt and Fluke considered it not to be an issue that staff are not adequately trained because Plaintiff got one item back twenty-four hours later. During the targeted shakedown May 15, 2021 by Defendant Jessen and Pinkelman of Plaintiff's cell, his legal, educational, and

religious books were swept off of his bookshelf into a pile on his desk, his legal documents were spread across the top shelf of his and his roommates closet by Defendant Jessen and his roommates dirty and damp boxers, socks, towel, washcloth and t-shirt were picked up from the floor and piled on top of the Plaintiff's legal documents. The calendar that was taken by Jessen had Plaintiff's inmate identification number stamped on it by the Property Office when it was received.

This display from Jessen appears to be intentional, deliberate, and malicious harassment of the Plaintiff which is attributed to lack of morals, lack of ethics, and lack of proper training as to what she is and is not allowed to do.

Due to improper training, Defendants Schieffer, Maturan, and Voigt apparently do not know their proper duties when it comes to the Administrative Remedy Process. Officers should be able to provide what policy prohibits item and where in policy before taking or when taking any item. When Sco. Jessen was confronted by Plaintiff, she stated that she had been taking many calendars during shakedowns, and if the Plaintiff wanted it back, he would have to take it up with his unit coordinator. The reason she took the Coca-Cola calendar was because she did not have adequate training to know that inmates are allowed to receive calendars from the property office that come in through the mail.

Defendants DOC, Wasko, Fluke and Voigt have the duty to ensure that officers have adequate training to know what inmates are allowed to possess and receive through the mail.

Defendants DOC, Wasko, and Fluke have a duty to ensure that Defendants Voigt, Schieffer, and Maturan are properly trained in the handling of the Administrative Remedy Process as their lack of sufficient training deprives Plaintiff and other inmates due process and effective grievance. The Plaintiff has suffered injury because Leidholt, Reisch, Fluke, Schieffer, Reyes,

Schryvers, Voigt, and the training officer negligently performed their duties to adequately train officers.

The lack of training is largely in part a product of the severe understaffing at MDSP and the DOC as a whole, and the overcrowding for the current staffing levels.

Due to lack of training, harassment, lack of morals, lack of ethics, or deliberate and malicious indifference to Plaintiff's rights and property, Plaintiff was sent to the SHU on November 9, 2021 by Defendants Jessen and Loewe on a day that inmates were receiving pizza we paid for as part of a fundraiser.

The first forty-eight hours, Plaintiff was placed in a suicide gown which exposed Plaintiff's feet, legs, and arms, without any clothing, with a mattress pad instead of a mattress, no pillow, (without his medical CPAP device for the whole stay), with only one blanket that does not fully cover the body, without anything to read to occupy the mind, or a radio to listen to.

The reason Plaintiff was sent to the SHU was intentional so that staff members could consume the two large pizzas and chicken strip basket that Plaintiff paid $34.00 for. The reason Defendants Jessen and Loewe used to place Plaintiff in the SHU was not a violation of any policy or rule, was for exercising his freedom of speech in a non-derogatory, non-threatening, and non-insulting manner when Plaintiff implied that Jessen, as well as other officers, were being overworked and underpaid, and deserved to be able to relax. The disciplinary report that was written by Loewe charged Plaintiff for "Conduct which disrupts the security and good order of the institution, or interfering with an officer in the performance of their duties", with no allegation as to how the protected speech did, and was dismissed by the Plaintiff's unit manager because it was found that Plaintiff did not violate policy. Over a dozen correctional officers that read the disciplinary report that sent the Plaintiff to the SHU for seven days stated that he should

not have been in the SHU. In an attempt to get what he paid for, Plaintiff submitted grievances, was denied by Defendant Voigt, and it was rejected by Defendant VenOsdel. Defendant Schieffer also refused to remedy the situation. Pizza Ranch is open seven days a week, officers drive to and from Yankton on a daily basis and could get what Plaintiff paid for.

This was the second time Defendant Loewe had Plaintiff placed in the SHU under similar conditions, for conduct that was not a violation of a major prohibited act. The previous time was for what in the Inmate Living Guide was classified as a minor prohibited act, which does not place inmates in the SHU.

Defendants actions violate United States Constitution Amendment One and South Dakota Constitution Article VI § 4 depriving Plaintiff of freedom of speech and right to receive protected speech. The harassment that Plaintiff has been subjected to by Defendants Jessen and Loewe and the physical, emotional and psychological pain associated with their conduct have also violated Plaintiffs United States Constitution Amendment Eight and South Dakota Constitution Article VI §23 by subjecting him to cruel and unusual punishment.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants DOC, Wasko, Fluke, and Voigt in their official capacities by ordering them to ensure that all correctional officers are fully and adequately trained in what items inmates are allowed to possess.

Plaintiff requests injunctive relief against Defendants DOC, Wasko, and Fluke in their official capacities by ordering them to ensure that all staff members that handle grievances are fully trained in their duties regarding what they are to do in regards to them.

Plaintiff requests injunctive relief against Defendants Jessen, Loewe, Fluke, Schieffer, Voigt, and VenOsdel by ordering them to provide Plaintiff with formal, written apologies for the

conduct that amounted to Plaintiff being placed in the SHU November 9, 2021 and his not getting what he purchased.

Plaintiff requests injunctive relief against Defendants Jessen, Loewe, Fluke, Schieffer, Voigt, and VenOsdel by ordering them to provide Plaintiff with what he purchased.

Plaintiff requests an award of nominal damages in the amount of $100.00 from Defendants Jessen, Loewe, Fluke, Schieffer, Voigt, and VenOsdel in their individual capacities for their conduct regarding the shakedowns of Plaintiff's cell, placing him in the SHU, and denying Plaintiff of what he paid for.

Plaintiff requests an award of compensatory damages in the amount of $1,000.00 from Defendants Jessen, Loewe, Fluke, Schieffer, Voigt, and VenOsdel in their individual capacities for their conduct regarding the shakedowns of Plaintiff's cell, placing him in the SHU, and denying Plaintiff of what he paid for.

Plaintiff requests an award of punitive damages in the amount of $5,000.00 from Defendants Jessen, Loewe, Fluke, Schieffer, Voigt, and VenOsdel in their individual capacities for their conduct regarding the shakedowns of Plaintiff's cell, for each day Plaintiff was in the SHU for the sanctioned malicious harassment from the Defendants in this claim.

### G. Sex Offender Management Program policy claims

Defendants DOC, Leidholt, Reisch, and Clark have created a Sex Offender Management Program policy that is unconstitutional facially and as applied as it required Plaintiff and requires others while on suspended sentence supervision to submit to polygraph tests to determine whether they stay in the community on supervised release or not.

Defendants DOC, Carlson, and Parole Board Members give great probative value and weight to the opinions of the polygraph examiners to strip Plaintiff and other individuals on suspended

sentence supervision and parole supervision without prior fair warning of what the policy calls a "policy driven response" nor what "standardized polygraph treatment responses" are.

Defendants DOC, Reisch, and the Parole Board Members have also included provisions that require Plaintiff and other individuals on suspended sentence supervision and parole supervision to disclose private and personal matters that are not part of conviction, requiring self-incrimination of matters that could result in automatic loss of liberty that apply to parole and suspended sentence supervision rules that are not part of treatment. And by allowing DOC or DOH employees to order those on supervised release to be terminated from treatment in order to be in violation of terms and conditions of supervision, as Defendant Carlson did to Plaintiff.

Defendants actions violated and violate rights to due process guaranteed by United States Constitution Amendments Five and Fourteen and South Dakota Constitution Article VI §2, rights against self-incrimination in violation of United States Constitution Amendment Four and South Dakota Constitution Article VI § 11, and rights to impartial jury in violation of United States Constitution Amendment Six and South Dakota Constitution Article VI § 7,

And Plaintiff notes that while not challenging in this action his plea agreement, conviction, sentence, Defendants conduct and attitude in this matter further violates due process rights of Plaintiff as guaranteed by United States Constitution Amendment Five and Fourteen and South Dakota Constitution § 2 as the conditions were not stipulated by the state or the court as part of Plaintiff's plea agreement.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants DOC, Reisch, Wasko, Parole Board Members, and Carlson in their official capacities through elimination of vague references in SOMP policy of what "policy driven response" is and "standardized polygraph treatment

SOMP policy of what "policy driven response" is and "standardized polygraph treatment responses" are.

Plaintiff requests injunctive relief against Defendants DOC, Reisch, Wasko, Parole Board Members, and Carlson in their official capacity through banning the use of polygraphs to elicit personal and private information not part of conviction.

Plaintiff requests injunctive relief against Defendants DOC, Wasko, Parole Board Members, and Carlson in their official capacities through banning the use of polygraphs to elicit self-incriminating statements about compliance with parole and suspended sentence supervision rules and conditions.

Plaintiff requests injunctive relief against Defendants DOC, Wasko, Parole Board Members, and Carlson in their official capacities through banning use of the opinions of polygraph examiners to detain or revoke supervision without evidence or factual knowledge of wrongdoing.

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against Defendant Reisch in his individual capacity.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against the Defendants Parole Board Members in their individual capacities.

Plaintiff requests an award of punitive damages in the amount of $10,000.00 against the Defendant Carlson in her individual capacity.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against the Defendant Leidholt in his individual capacity.

**H. Parole Policy Claims**

The Plaintiff is serving a sentence for a crime committed in January of 2006. On December 4, 2016, his term of incarceration expired and he began serving his suspended sentence. He was returned to incarceration during his suspended sentence May 24, 2017 and has remained incarcerated to present.

The Defendants DOC and Parole Board Members made a policy to where certain individuals like the Plaintiff, other inmates situated like him, and those convicted of crimes committed prior to July 1, 1996 can only be granted parole or return to suspended sentence supervision if a panel of one to three parole board members recommend that the "full board" grants them a hearing the following month.

Under state law, a panel is authorized to take action with the authority of the full board to grant or deny release. However, Defendants DOC and Parole Board Members made policy provisions to strip the authority to grant release to the panel. Under their policy, the full board must be convened with a majority of the members (five or more) voting to grant parole where a minority (four or fewer) can vote to deny release. With this being legislative intent. But Defendants' policy actually allows one board member to deny release by denying ability to be released.

Under state law, inmates under statutes of SDCL 24-15 must have a parole hearing no later than every eight months. Under state law, inmates under SDCL 24-15A must have a parole hearing no later than every twenty-four months. The legislature clearly expected the hearing to be capable of granting release, even the panels themselves. Yet the DOC and Parole Board Members circumvented those laws through their policy and practice as the panel does not have the authority to grant release.

Plaintiff has not had a hearing since February 2019 to where there was a possible outcome of granting release.

The statutes give Plaintiff and other inmates statutory rights to a hearing where release is possible, and a liberty interest right to that possibility. And this was expected when Plaintiff entered his plea agreement of guilty to the conviction.

Defendants DOC and Parole Board Members violate Plaintiff's liberties given through state statute, United States Constitution Amendment Fourteen and South Dakota Constitution Article VI §§1 and 2; Defendants DOC and Parole Board Members have subjected Plaintiff to cruel and unusual punishment in violation of United States Constitution Amendment Eight and South Dakota Constitution Article VI § 23 through their actions in this matter which cause Plaintiff to suffer physical, emotional and psychological injury due to their behavior and the conditions he is imprisoned under, and Plaintiff notes that while not challenging in this action his plea agreement, conviction, sentence, Defendants conduct and attitude in this matter further violates due process rights of Plaintiff as guaranteed by United States Constitution Amendment Five and Fourteen and South Dakota Constitution § 2 as the conditions were not stipulated by the state or the court as part of Plaintiff's plea agreement.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief against Defendants of this claim in their official capacities by ordering SD BOPP policy 8.1.A.5 "Parole Board Decisions and the Setting of Next Review Dates" be changed through requiring the Defendants Parole Board Members to hold parole hearings that release is possible as a direct result of the hearing whether only in front of the full board or removing the stipulation where they could only be granted release by the full board to align with the purpose and intent of the legislature through state statutes.

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $10,000.00 against the Defendants of this claim in their individual capacities due to the physical, emotional, and mental injury and suffering Plaintiff has been subjected to as a direct result of their policy.

Plaintiff requests an award of punitive damages in the amount of $50,000.00 against the Defendants of this claim in their individual capacities due to the physical, emotional, and mental injury and suffering Plaintiff has been subjected to as a direct result of their policy.

### I. Overcrowding/Understaffing Claims

The South Dakota Department of Corrections is critically understaffed, especially when compared to the population levels.

At Mike Durfee State Prison, one Housing Unit was completely shut down. Yet still on a regular and weekly basis classes and worksites are shut down due to insufficient staff to supervise. Recreation gets cancelled or reduced due to insufficient staff to supervise. The medication line has been run without security officers to supervise. On October 9, 2021, there was a fight in the Dietary Building that lasted for over two minutes before the minimal staffing in the building noticed it. That same night, staffing level was so low that officers from East Crawford and West Crawford had to close their Day Halls and operate with only three officers to cover both units whose combined population is over four hundred inmates. Cell searches frequently get delayed and sometimes reduced due to the staffing levels. As stated above, food consistently runs out and gets shorted, the population level made it impossible to follow CDC guidelines to socially distance and ended up with nearly all inmates catching COVID-19 and others dying from it. The commissary company frequently runs out of commissary items to sell,

including envelopes for mail, shampoo, conditioner, deodorant, lotion, soap, and food items. In the month of February alone, Plaintiff did not receive around twenty-five percent of his commissary order due to shortages.

Staff work without adequate training just to have bodies in uniforms.

The risk of SARS-COV-2 is real, not hypothetical nor imagined. It poses serious risk to Plaintiff's life due to tuberculosis, exposure to asbestos at MDSP when the building Old Main was razed by an excavator with a back-hoe in 2004 or 2005 without have a team remove the asbestos first, improper ventilation, obesity, history of being a heavy tobacco smoker, and family history of diabetes, cancer, heart disease, liver disease, and kidney disease. The environment at MDSP under the leadership of Defendants Leidholt, Reisch, Clark, DOH, CHS, Carpenter, Hamilton, and Fluke during the global pandemic – that is still killing people – caused over ninety percent of the inmate population to contract SARS-COV-2 and some died from their leadership.

The risks to Plaintiff with regards to his personal history, family history, the new Delta variant, and the leadership capabilities proven with regards to DOC, DOH, CHS, and Fluke show that if Plaintiff contracts the virus, there is a high probability that he will die or have long-term physical injury and impairment. The chance of contracting is enlarged by the fact that all open housing units are operating at 150% of design capacity, and mold being in showers due to insufficient ability for proper sanitation.

Plaintiff faces other risks to his health as well due to the severe understaffing levels at MDSP where the DOC went from eight hour shifts for officers to twelve hour shifts, which uses a third less officers, yet still is unable to staff at minimum levels where multiple days in the past few months there wasn't enough staff to supervise medication distribution lines. That on an almost daily basis, there isn't enough staff for all worksites to be open. That on an almost daily basis,

there isn't enough staff for full recreation, with sometimes no recreation at all. That there are inmate assaults without staff to notice it when it is right in front of them as happened October 9, 2021. That CHS isn't able to treat inmates. That Defendant Summit Food Service, LLC consistently runs out of food during servings on almost a daily basis. That due to the conditions and shortages, officers have lost their will and ignore gambling, extortion, gangs "shaking it up" with their special handshakes, gangs throwing up their signals, and many other blatant security and safety threats.

Plaintiff and other inmates have been subjected to the fly infestations in the Dietary Building, and as a result of negligence by Defendant Tammy Doyle, bed bug infestations due to her refusing to replace mattresses with tears and holes in them in the A&O area where all inmates arriving at MDSP go and then distributed to the other units.

Defendants Parole Board Members exacerbate the conditions with how it handles those on suspended sentences, sex offenders, and "old law" inmates.

As Plaintiff has been incarcerated for over 1600 days during his suspended sentence on a technical violation when his parole officer acknowledge that Plaintiff was not willfully and consistently failing to abide by the terms and conditions of his supervision, he is being subjected to cruel and unusual punishment with regards to all of the foregoing conditions, in violation of United States Constitution Amendment Eight and South Dakota Constitution Article VI §23, and Plaintiff notes that while not challenging in this action his plea agreement, conviction, sentence, Defendants conduct and attitude in this matter further violates due process rights of Plaintiff as guaranteed by United States Constitution Amendment Five and Fourteen and South Dakota Constitution § 2 as the conditions were not stipulated by the state or the court as part of Plaintiff's plea agreement.

**REQUESTED RELIEF:**

Plaintiff requests injunctive relief through the emergency convening of a three-judge panel to assess the overcrowding and understaffing.

Plaintiff requests injunctive relief against Defendants DOC and Fluke through ordering them to extend the Plaintiff's limits of confinement to a residence in the Sioux Falls, SD area under supervision and conditions consistent with his judgment and sentence given by the Court.

Plaintiff requests injunctive relief against Defendants DOC and the Board through revising and limiting how they treat those serving their suspended sentences and "old law" inmates by requiring concrete reasons to deny release to supervision.

### J.   ABEL Screen, Pre-Release Psychosexual Assessment and Sexual History Polygraph

Defendants DOC and Carlson have been using false information from improperly administered ABEL Screen Assessment and fraudulent information from individual administering a Pre-Release Psychosexual Evaluation to label Plaintiff as a high risk sex offender to reduce his opportunity for release onto his suspended sentence supervision and to affect his classification.

With the ABEL Screen Assessment, Defendant Stoebner administered it with faulty and misleading information. He instructed Plaintiff to look at each picture and rate whether strong sexual attraction, slight sexual attraction, slight sexual repulsion, strong sexual repulsion, or neutral. And he instructed Plaintiff to avoid using neutral as there will always be either attraction or repulsion in his mind. Therefore, when Plaintiff looked at pictures, Plaintiff was marking a slight sexual attraction when he had no sexual attraction at all but was avoiding the neutral button, even as in many instances he could not picture a sexual interaction with subject of pictures, thus was rating the pictures solely on the looks of the subjects alone.

Plaintiff was not provided with results until an unknown Defendant was doing the Pre-Release Psychosexual Assessment. In that moment, Plaintiff was told the context of th subjects in the picture's surroundings also played a factor. Thereby because a subject had ropes loosely around her, that meant arousal to bondage, individual seen through a window meant arousal to voyeurism, when in fact Plaintiff was rating only the appearances of the subjects and not the context as was not instructed to that.

With the Psychosexual Evaluation, the unknown Defendant himself also misrepresented and falsified the responses Plaintiff gave to him, and put psychological information with unknown sources. When Plaintiff was in sex offender treatment with Renee Peters and Mark Storgaard, Plaintiff's group was told to never say you were cured and always acknowledge that there is always a risk of re-offending. Thus, when Plaintiff was asked by unknown Defendant that if he was alone with a similar individual and there was no chance of getting caught, if Plaintiff would do it again, Plaintiff truthfully told the unknown Defendant that he had no plans or intentions of doing it again, and that he was told that to never say he's cured, thus there was a possibility he would do it again.

However, the unknown Defendant stated Plaintiff said he would do it again if given the chance, outright lying on official documents that affected Plaintiff's supervision, chance for release, his assessed risk factor, his right to receive mail (as was decided in prior 42 USC §1983 action), and his classification. Plaintiff has sent kites to Defendants Gilchrist and Carlson informing them of truth and asking for new assessments and evaluations, but they refused ot ensure the DOC and Parole Board Members would have truthful information about Plaintiff.

Plaintiff has grieved the matter and was told would only happen if small board recommended Plaintiff to the full board, otherwise would be provided only with information from current assessments as response to informal resolution request.

Defendant Schieffer rejected grievance, falsely claiming that Plaintiff failed to request an action.

Unknown Defendant deliberately falsified statements of Plaintiff and placed false information in the Pre-Release Psychosexual Assessment deliberately to keep Plaintiff from being granted release.

Defendant Stoebner intentionally gave false and misleading instructions to Plaintiff regarding the ABEL Screen through his inadequate training.

Unknown Defendant, Defendants Stoebner, Gilchrist, Carlson, DOC, and Schieffer's actions violate Plaintiff's United States Constitution Amendment One and South Dakota Constitution Article VI §5 freedom of expression by falsely representing Plaintiff, Plaintiff's United States Constitution Amendments Five and Fourteen and South Dakota Constitution Article VI §2 Due Process rights by denying effective process to repair the injury against Plaintiff.

The Defendants in this action also violated established statutory rights of Plaintiff and obligations they had to Plaintiff.

**REQUESTED RELIEF:**

Plaintiff requests declaratory relief against Defendants of this claim in their official capacities.

Plaintiff requests injunctive relief against Defendants of this claim in their official capacity by ordering them to acknowledge to the Parole Board that information Defendants provided the Board is false and fictitious.

Plaintiff requests injunctive relief against the Defendants of this claim in their official capacities to have an expert unaffiliated with the Board, the DOC, and SOMP administer new ABEL Screen with appropriate instructions and conduct a new Pre-Release Psychosexual Assessment.

Plaintiff requests injunctive relief against Defendant Carlson in her official capacity by changing the MnSost-R and Static-99 scores she gave Plaintiff to what they were prior to reviewing the false ABEL Screen Assessment and Pre-Release Psychosexual Evaluation.

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $50,000.00 against the Defendants of this claim in their individual capacities for injuries sustained and suffered due to actions and inactions.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Leidholt, Reisch, and Clark in their individual capacities for allowing false and fraudulent information to represent Plaintiff.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Fluke in his individual capacity for allowing Schieffer to reject the complaint and ignoring the issue.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Schieffer in her individual capacity for rejecting the complaint and ignoring the issue.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Stoebner in his individual capacity for giving false and misleading instructions.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Gilchrist in his individual capacity for refusing to correct issue.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Defendant Carlson in her individual capacity for refusing to correct issue.

Plaintiff requests an award of punitive damages in the amount of $15,000.00 against Unknown Defendant in his individual capacity for his false and fraudulent mischaracterizations.

To the extent that the State of South Dakota waived sovereign immunity pursuant to state statute by purchasing insurance, Plaintiff requests an award of punitive damages in the amount of $150,000.00 against Defendant South Dakota Department of Corrections in its official capacity for the actions and inactions allowed and sustained which affected Plaintiff's rights.

### K. Privacy/Confidentiality/HIPPA Claim

Around 2014, Defendant Mark Stoebner and the Parole Board required Plaintiff to fill out a sexual history polygraph booklet and take the test in order to be considered for parole release. If Plaintiff would have refused, his chance for release onto his initial parole would have been zero.

After taking the test, Plaintiff learned that Defendant Stoebner or Carlson entered the private and confidential treatment information from the booklet into a database for non-treatment/non-medical personnel to see and read, without a release to provide more than progress, behavior, and results to them.

Under the signed release, Defendants had an obligation, a legal duty to not disclose more information than what was agreed to.

Defendants actions violated HIPPA, the Defendants actions also violated the Plaintiff's implied rights to privacy based on the written contract/agreement regarding the release of information in violation of South Dakota Codified Law with regards to promises made without

any intention of performing, improperly obtained intellectual property of Plaintiff's, suppression of facts to mislead Plaintiff into providing the information, United States Constitution Amendment Four and South Dakota Constitution Article VI § 11. The Defendants did not have the consent of the Plaintiff, the owner of the intellectual property in the booklet, and no prior fair warning was given to the Plaintiff that his innermost secret thoughts would be published for anyone other than the intended recipients to read, thereby violating his liberty interest and due process rights provided by United States Constitution Amendments Five and Fourteen, and South Dakota Constitution Article VI §2.

Under HIPPA, South Dakota Codified Law, and United States Constitution Amendments One, Four, Five, and Fourteen, Plaintiff had a reasonable expectation of privacy/confidentiality of his private treatment and medical information. At no time was it stated or implied that any information would be made available outside of treatment providers only.

**REQUESTED RELIEF:**

Plaintiff requests an award of nominal damages in the amount of $100.00 against the Defendants of this claim in their individual capacities.

Plaintiff requests an award of compensatory damages in the amount of $500,000.00 against the Defendants of this claim in their individual capacities as liability for the deceit and injury suffered physically, emotionally, and mentally.

Plaintiff requests an award of punitive damages in the amount of $1,000,000.00 against the Defendants of this claim in their individual capacities as punishment for the deceit and injury suffered physically, emotionally and mentally caused by this information being published.

Plaintiff requests injunctive relief against Defendants in their official capacity through Court order that all material from the polygraph be deleted, erased, overwritten, shredded, and destroyed.

## V. Injuries

Injuries that Plaintiff has suffered from each claim is described in section IV for each presented claim to preserve judicial resources and time, and to present for each specific claim.

## VI. Relief

Relief that Plaintiff is requesting for each claim is described and listed above in section IV for each presented claim. Plaintiff further requests an award of Court costs and filing fees, compensation for copy and supply fees, award of attorneys fees, and costs of litigating.

## VII. Exhaustion of Administrative Remedies and Administrative Procedures

All of the foregoing claims and injuries occurred while Plaintiff was confined in prison at the Mike Durfee State Prison in Springfield, SD and at the South Dakota State Penitentiary in Sioux Falls, SD.

Claims G. SOMP policy, H. Parole policy, J. ABEL Screen, Pre-Release Psychosexual Assessment and Sexual History Polygraph, and K. Privacy/Confidentiality/HIPPA also affected Plaintiff while he was on parole supervision from August 3, 2016 to December 4, 2016 and suspended sentence supervision from December 4, 2016 to May 24, 2017.

All of the above claims have been exhausted thorough the Administrative Remedy Procedure, except for B.4 Utensils and Tables, informal was only presented as response claimed that the situation was being addressed, B.6 Paper Towels and Garbage Bags, only addressed Paper Towels, D.3 Legal Access to Case Law and Statutes, informal was only presented as response claimed that the situation was being addressed.

The details and relief requested has been expanded upon due to Administrative Remedy
Procedure rules that limited what could be included.

**VIII. Previous Lawsuits**

A. To the best of Plaintiff's knowledge, he has not had a case dismissed on the "three
   strikes rule" under 28 U.S.C. § 1915 (g)

B. Plaintiff has not filed any other lawsuit in state or federal court dealing with the same
   facts in this complaint, other than appealing the revocation of suspended sentence.

C. Plaintiff has filed another lawsuit in the United States District of South Dakota Court,
   Southern Division.

D. The Complaint was versus Robert Dooley, et al, and was dismissed at summary
   judgment in favor of Defendants.

E. The Previous Complaint dealt primarily with First Amendment rights where catalogs,
   books and pictures were rejected.

F. The Honorable Judge Karen E. Scheier presided over the matter which commenced
   around 2011 and was dismissed in about 2014.

**IX. Jury Demand**

Plaintiff demands trial by jury of these matters and claims for relief.

**X. Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by non-frivolous argument for extending, modifying, or
reversing existing law; (3) that factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements of

Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers

may be served. I understand that my failure to keep a current address on file with the Clerk's

Office may result in the dismissal of my case.

Date of signing: 3 March 2022

Signature of Plaintiff:
Name of Plaintiff:      Kevin L. Hughbanks (a.k.a. John Doe)
Prison Identification #:   22448
Prison Address:       Mike Durfee State Prison
                     1412 North Wood Street
                     Springfield, SD 57062-2238

**XI. Please Redact Name of Plaintiff for all non-sealed filings Pursuant to authorization to**

**use a Pseudonym August 8, 2020 by Case 5:20-mc-00019-KES Document 7**